58 CCPA

**Application of Harmon M. GARFINKEL.**
**Patent Appeal No. 8421.**

United States Court of Customs
and Patent Appeals.

Feb. 18, 1971.

---

Clinton S. Janes, Jr., Corning, N. Y., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Associate Judges, and DAVIS, Judge, United States Court of Claims, sitting by designation.

ALMOND, Judge.

This is an apeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 18–23 of appellant's application entitled "Glass Article and Method of Production." [1] No claims have been allowed.

The invention relates to the strengthening of lithium aluminosilicate ($Li_2 O$–$Al_2 O_3$ –$SiO_2$ and lithium zirconosilicate ($Li_2$–$ZrO_2$–$SiO_2$) glasses by contacting the glass at an elevated temperature, but below the strain point of the glass, with a source of larger diameter, monovalent metal ions for a period of time sufficient to cause the replacement of the original lithium ions within the glass surface layer with the monovalent metal ions on an ion-for-ion basis. This treatment may be by immersion of the glass in a bath of a molten salt of a monovalent metal selected from the group consisting of sodium, potassium, rubidium, cesium, copper, silver, or thallium. The stuffing of the larger metal ions into the surface of the glass causes compressive stresses to be developed in situ, since the glass volume cannot increase inasmuch as the exchange temperature is too low to allow viscous flow and molecular rearrangement therein to release the stresses built up.

Acknowledging that this type of treatment has been known for alkali metal silicate glasses, and in particular soda-lime-silica glass ($Na_2 O$–$CaO$–$SiO_2$), appellant states that the crux of his invention is the discovery that, contrary to prior experience with alkali silicate glasses, lithium silicate glasses having from 10–40% $Al_2 O_3$ or $ZrO_2$ exhibit exceptionally large increases in mechanical strength which are retained reasonably intact even after substantial surface abrasion.

Illustrative are claims 18 and 21:

18. A lithium silicate glass article exhibiting substantially increased strength after being subjected to surface abrasion, said article containing ions of lithium and of at least one monovalent metal of larger size selected from the group consisting of sodium, potassium, rubidium, cesium, copper, silver, and thallium and having a surface compressive stress layer of a depth of at least several microns, the concentration of the larger monovalent metal ions being greater in said surface layer than in the interior portion of said article and the concentration of the lithium ions being greater in the interior portion of said article

1. Serial No. 465,235 filed May 28, 1965, as a continuation-in-part of application serial No. 181,886 filed March 23, 1962.

than in the surface layer thereof, said differences in concentration creating the compressive stress in said surface layer, the interior portion of said glass article having a composition consisting essentially, by weight on the oxide basis, of about 1–20% $Li_2O$, 10–40% of an oxide selected from the group consisting of $Al_2O_3$ and $ZrO_2$, and $SiO_2$.

21. In a method for strengthening a lithium silicate glass in which the lithium ions in a surface of the glass are replaced by ions of at least one larger monovalent metal selected from the group consisting of sodium, potassium, rubidium, cesium, copper, silver, and thallium by bringing the surface of the glass into contact with a source of said larger monovalent metal ions

while retaining the glass at an elevated temperature but below the strain temperature of the glass until the surface of the glass to a depth of at least several microns is placed in compression, the improvement which comprises forming the initial glass to be strengthened by said treatment from a lithium silicate glass consisting essentially, by weight on the oxide basis, of about 1–20% $Li_2O$, 10–40% of an oxide selected from the group consisting of $Al_2O_3$ and $ZrO_2$, and $SiO_2$.

Claims 19 and 22 depend from claims 18 and 21, respectively, and limit the larger monovalent metal ions to sodium ions. Claims 20 and 23 also depend from claims 18 and 21, respectively, and limit the metal ions to potassium ions.

The references relied upon are:

| | | |
|---|---|---|
| Hood et al. (Hood) | 2,779,136 | January 29, 1957 |
| Weber | 3,218,220 | November 16, 1965 |
| Kurz (British) | 855,820 | May 25, 1960 |

Kistler, "Stresses in Glass Produced by Non-Uniform Exchange of Monovalent Ions," Journal of the American Ceramic Society, Vol. 45, No. 2, February 1962, pages 59–68.

———◆———

Hood discloses a method of strengthening glass wherein lithium ions from an external source are exchanged with sodium and/or potassium ions present within the surface of the glass. Glasses containing 1–2% $Li_2O$, 7.5–25% $Al_2O_3$, and $SiO_2$ may be used. It is disclosed that high abraded tensile strength is obtained; however, this is due to a mechanism unrelated to the claimed subject matter.

Weber discloses the chemical strengthening of sodium silicate glass articles through the large-ion-for-small-ion type exchange at an elevated temperature below the strain point of the glass.

Kruz discloses a process different from that claimed here for improving the chemical durability of alkali silicate glasses which may contain the oxides of metals, including aluminum and zirconium.

Kistler discloses a chemical strengthening process similar to that of Weber in that compressive stresses are induced into the surface of the glass by exchanging larger ions for the smaller ions in the glass. Kistler states that it would be expected that "exposing a lithium glass to sodium ions, etc., would produce a compressive stress." The glasses used by Kistler are disclosed by him from 1–5.12% $Al_2O_3$.

The examiner rejected claims 18–23 under 35 U.S.C. § 103 as being unpatentable over Kistler or Weber, each considered alone or with Hood and Kruz. The board considered Weber as generally reinforcing the disclosure of Kistler. Therefore, treating Kistler as the principal reference, the board affirmed the examiner's rejection, stating:

We do not agree with appellant that Kistler did not make obvious the ap-

plication of his general method of increasing the compressional stress on the surface layer of glass to the strengthening of lithium glasses, including lithium glasses which contain 10% or more $Al_2 O_3$. * * *

* * * * * *

Appellant suggests or implies that the employment of $Al_2 O_3$ in the treated glasses in large percentages resulted in a retention of the strength characteristics created by the ion exchange. Why this was regarded as unexpected is not apparent. We have no data on the retention of strength characteristics as applicable to the untreated alkali metal, silica alumina glasses as compared with equivalent glasses containing $Al_2 O_3$ so appellant's conclusions as to this retention in $Al_2 O_3$ glass treated by the Kistler method lack firm foundation. It would be expected, moreover, from the disclosure of the Kurz patent * * * that aluminum oxide was added to alkali metal-silica glasses in order to improve their durability. * * * Hood et al. is relied on for supporting evidence of the properties of lithium-containing glasses.

Appellant contends that the reasoning of the board overlooks the crux of his invention, namely, the tremendous increases in abraded strength obtained in lithium silicate glasses containing 10% and more $Al_2 O_3$. The essence of appellant's argument is summarized in his brief when he states:

Finally, neither Kistler nor Weber discloses the synergistic effect on *abraded* strength the inclusion of 10–40% $Al_2 O_3$ or $ZrO_2$ will have on alkali silicate glasses ion exchanged in accordance with their inventions and $Al_2 O_3$ is only described by Hood et al. in connection with the unique effect of crystal growth produced thereby.

We agree with the board that the prior art references, considered as a whole, suggest the claimed invention so as to render it obvious to one of ordinary skill in the art. Kistler discloses that an im-proved strength results from his treatment of glass articles. These glasses may contain small amounts of $Al_2 O_3$ and Kistler suggests that lithium silicate glasses may be used. From the disclosure of Kistler and the other references, at least the reasonable inference to one of ordinary skill in the art would be to apply the Kistler process irrespective of the alumina level. It is noted that Hood and Kurz show that glasses having alumina contents within appellant's range have been used in related chemical strengthening processes.

While Kistler indicates that some strength is lost when glass articles treated by his process are handled "in careless fashion," these articles still have an improved strength over untreated articles. Appellant alleges that, in comparison, the treatment of glasses containing greater than 10% $Al_2 O_3$ or $ZrO_2$ produces glass articles considerably stronger after rough handling or abrading, and that such improved properties amount to new and unexpected results. However, there is no factual support, by way of comparative tests or otherwise, for these allegations. In fact, the information set forth in appellant's specification seems to militate against appellant's allegations of unexpected superiority. For example, we note in Table I of appellant's specification that glasses containing no $Al_2 O_3$ (samples 1 and 2) have a modulus of rupture (M.O.R.) of $33 \times 10^{-3}$ psi and $24 \times 10^{-3}$ psi, while glasses containing $Al_2 O_3$ within the recited percentage range have an M.O.R. that ranges from $22 \times 10^{-3}$ psi (sample 18) to $106 \times 10^{-3}$ psi (sample 7). Because the samples without $Al_2 O_3$ have higher strength than at least one of the samples with an amount of $Al_2 O_3$ within the recited percentage range, doubts are raised in our minds about the alleged superiority of treated glasses containing over 10% $Al_2 O_3$. Since appellant chose to predicate unobviousness on unexpected superiority and since there is no evidence of such superiority, we are not persuaded of unobviousness. In re Casey, 405 F.2d 567, 56 CCPA 793

(1969); In re Swentzel, 219 F.2d 216, 42 CCPA 757 (1955).

While the primary issue raised was that involving obviousness, as discussed above, there are several other issues that must be mentioned. In his Answer, the examiner discussed at length the merits of a Rule 131 affidavit which appellant's assignee had filed in another application. Because of this, appellant felt compelled to file an affidavit under Rule 131 in the present case for the sake of what the examiner termed "appellate convenience and administrative efficiency." The affidavit purportedly shows reduction to practice prior to Kistler's publication date of February 1962. The board found the Rule 131 affidavit insufficient "because the experiments reported appear to be limited to compositions employing $ZrO_2$ and the references are related largely to glass compositions in which the $Al_2O_3$ additive is present and no $ZrO_2$ is included in the compositions." The board's position is clearly erroneous. Experiments are shown in the Rule 131 affidavit for a glass composition labeled FQX, which is listed as containing 82 parts (or 20.1%) of $Al_2O_3$.

There remains still another aspect to the sufficiency of the Rule 131 affidavit. The examiner took the position that Kistler was effective as prior art under § 102(a) shortly after Dr. Kistler's presentation of a paper at the sixty-third annual meeting, The American Ceramic Society, Toronto, Canada on April 25, 1961. A footnote in the Kistler article in the Journal of the American Ceramic Society states that the article is based on that paper. The solicitor contends, citing In re LoPresti, 333 F.2d 932, 52 CCPA 755 (1964), that appellant has admitted that what Dr. Kistler disclosed at the meeting is prior art. Because appellant has from the beginning treated the information in Kistler as "prior art,"[2] we will do likewise. In re LoPresti, supra. Appellant states that he never intended to rely on a Rule 131 affidavit and submitted one only because the examiner demanded it. Appellant's counsel stated at oral argument that Dr. Kistler was first in this field, that appellant and others working for appellant's assignee had heard Kistler's paper presented in Toronto, that they had returned to the United States and discussed it with their colleagues and that they knew about Dr. Kistler's work prior to the development of the present invention. An affidavit to the same effect also appears in the record. Appellant states in his brief that "[t]he Kistler paper is recognized by the glass industry as initiating a new area of research in glass technology," and his counsel stated at oral argument that appellant considers his invention an improvement on the Kistler process. We have considered appellant's invention in this light in an attempt to determine if appellant's improvement is a patentable one.

Finally, appellant alleges that the analysis of 5.12% $Al_2O_3$ by Kistler is erroneous. An affidavit was submitted to show that the glass Kistler used actually contained only about 2% $Al_2O_3$. We do not consider this issue important to the determination in this case since, in any event, it is clear that Kistler discloses glass containing some $Al_2O_3$ in percentages well below the 10% or greater claimed by appellant. Therefore, we consider the exact percentage of $Al_2O_3$ shown in Kistler as being unimportant to the issue of whether it would have been obvious to perform Kistler's process on lithium silicate glasses which contain more than 10% $Al_2O_3$.

Therefore, we affirm the decision of the board.

Affirmed.

2. From the record we are uncertain whether the type of "prior art" referred to is of the § 102(f) or § 102(g) variety or whether it is of the "known * * * in this country" type as in § 102(a). What is clear, however, is that appellant has admitted that as to him the information in Kistler is prior art of some type.