**Application of Olof H. HELLSUND.**
**Patent Appeal No. 8607.**

.United States Court of Customs
and Patent Appeals.
March 15, 1973.

Rich, Acting Chief Judge, concurred in result and filed opinion.

Baldwin, J., concurred and filed opinion.

Richard E. Lyon, James W. Geriak, Thomas D. Kiley, Los Angeles, Cal., Francis D. Thomas, Jr., Washington, D. C., Lyon & Lyon, Los Angeles, Cal., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 2, 4, 7–10, and 21–23 of appellant's application entitled "Continuous Casting Process and Apparatus." [1] No claims were allowed.

The invention relates to the continuous casting of polymers into sheets. Appellant's apparatus can best be understood with reference to Figs. 1a, 1b and 2, reproduced below:

FIG. 1a.

FIG. 1b.

FIG. 2.

1. Serial No. 490,897 filed September 28, 1965.

Appellant casts polymeric sheets by feeding a monomer between two moving endless belts and curing (polymerizing) the monomer while it is contained within the space between the belts. Liquid monomer is fed to the top of lower belt 12 at point 18. The monomer is carried between rollers 13 and 16, at which point it becomes enclosed between the lower run of upper belt 11 and the upper run of lower belt 12. The two belts move through the curing zone 29 at the same speed. Curing is effected by heating the monomer, preferably by spraying belts 11 and 12 with hot liquid. The liquid, such as water, is sprayed from nozzles 33 which are positioned above and below the monomer as shown in Fig. 2. The polymer sheet may be postcured in zone 30. Belts 11 and 12 are supported at the desired distance from each other by rolls, such as rolls 37 and 38 in Fig. 2, which are spaced at short distances throughout the curing and post-curing zones.

As can be seen from the drawings, belts 11 and 12 follow a downward inclined path from the point defined by rolls 13 and 16 until they reach postcuring zone 30. The path is inclined in order to avoid problems previously encountered in polymer casting. It appears that continuous polymer casting between horizontal endless belts had previously been known, but that it had been impossible to maintain the spacing between the belts. This resulted in the lack of control over the thickness of the product. This problem was overcome by running the belts at an angle to the horizontal for the length of the curing zone so that a pressure head of the liquid monomer is developed which is sufficient to maintain the spacing between the belts until the liquid is polymerized. Appellant did *not* discover the use of the inclined path to maintain the spacing between the belts. Appellant's contribution resides in the suggestion that while the belts are inclined they should follow a curved path which is defined by their own natural curvature.

Claim 1 is illustrative:

1. A process for preparing substantially rigid sheets and the like which comprises passing a fluid composition comprising a polymerizable organic monomer between and in contact with two moving surfaces, providing a pair of seals between said surfaces such that said fluid composition is confined in a space bounded on two opposing sides by said seals, allowing said fluid to fill the cavity defined by said surfaces and said seals, passing said composition and moving surfaces through at least one zone in which said composition is subjected to conditions which cause said monomer to polymerize, one of said surfaces being disposed above the other of said surfaces in said zone, said upper surface being of such a size and weight that it would bow downwardly into said fluid and toward said second surface if said surfaces were horizontal in said zone, the path of said surfaces through said zone being defined by the natural curvature of said moving surfaces and maintaining said surfaces at an incline to the horizontal in said zone to cause a fluid head to be developed by said fluid composition whereby the fluid pressure exerted by said fluid composition is sufficient to maintain said surfaces substantially parallel to each other and the spacing between said surfaces at a predetermined distance in said zone, said natural curvature being substantially that which said surfaces would assume if supported only at the upper and lower limits of said incline, bringing said surfaces together to an extent sufficient to compensate for any shrinkage of the composition during polymerization such that said surfaces are maintained in contact with said composition during polymerization, and removing the resultant polymerized sheet from both of said surfaces.

The other claims add limitations concerning the monomer used, specify that the moving surfaces are made of stain-

less steel, add a postcuring step, or differ from claim 1 in other respects not pertinent here. No distinction between the claims has been drawn, and accordingly they will stand or fall together.

The rejection of the claims was made on the basis of a patent to Opel et al. (Opel).[2] It is clear from the patent that it was Opel who solved the problems associated with horizontal belt continuous casting by arranging the endless belts so that they are "inclined in such a manner that the pressure of the materials between the belts is sufficient to maintain the spacing between them at a desired predetermined distance." The Opel patent refers to the present application, treating appellant's "natural curve" process as a specie of the generic invention of placing the belts at an incline:

> As claimed herein, the inclined path of the moving belts may be a straight line or, as claimed in copending application Ser. No. 490,897, filed on the same date as the present application in the name of Hellsund, and assigned to the assignee of the present application, these belts may follow a curved path which is defined by the natural curvature of the belts.

The patent further states:

> It is to be understood that the word "inclined" as used in the present specification and claims is intended to include straight, curved, angular or other paths which may be defined by a belt moving between a first roller and a second roller wherein the first roller is at a height greater than that of the second roller.

Figures 1a, 1b, and 2–5 of the Opel patent are essentially identical with Figs. 1a, 1b, and 2–5 of the present application, and the description of the apparatus depicted in those figures is correspondingly similar. The patent also contains Figs. 6 and 7, which are directed to the straight line inclined path process apparently invented by Opel.

Appellant does not contend that he invented the straight line or generic variation of the process. On the contrary, appellant's application specifically states:

> However, it was not until the process and apparatus described and claimed in copending application Serial No. [490,945, now the Opel patent], filed on the same date as the present application in the names of Opel et al and assigned to the same assignee as the present application was developed that continuous casting of monomers on a commercial scale became possible. Certain problems continued to be experienced with regard to the use of the Opel et al process and apparatus including the need for extremely tall buildings to house the inclined portion of an apparatus of substantial length and the difficulty in maintaining the inclined portion in the desired position. Furthermore, the inclined portion of the Opel et al apparatus required rather massive supporting structures, and it was desired to simplify this portion of the apparatus.

The examiner rejected the claims under both section 102 and section 103 of the statute. The section 102 rejection, based on the premise that some "natural sag" would occur in even the straight line inclined path embodiment of Opel, was not sustained by the board.

Appellant argued before the board that the section 103 rejection should be reversed on two grounds: (1) that the Opel disclosure was not prior art with respect to appellant's application since they were both filed on the same day; and (2) that even if the Opel disclosure were available as prior art, appellant's invention would not have been obvious to one of ordinary skill in the art in view of the Opel disclosure. In his Answer, the examiner contended that appel-

2. U.S. Patent No. 3,376,371, issued April 2, 1968, to C. J. Opel and P. H. Bottoms, on an application filed September 28, 1965, the same day appellant's application was filed.

lant had admitted that the Opel invention was prior to his invention, pointing to the statements in appellant's application quoted above and also referring to statements allegedly made at an interview. The examiner postulated that the Opel disclosure was available as prior art under 35 U.S.C. § 102(a), (f) or (g).

Appellant submitted a brief in reply to the examiner's Answer. Whether or not appellant had previously admitted that part of the disclosure of the Opel patent was available as prior art, such an admission was clearly made in that reply brief. The pertinent portions of the reply brief are set forth below, with almost all emphasis being ours:

It is pointed out that the disclosure of Patent No. 3,376,371 is not available *in its entirety, but only insofar as the disclosure therein [is] acknowledged as prior art in the present application.* Indeed, it is expressly pointed out at column 2, lines 66–70 of Patent No. 3,376,371 that the embodiment comprising the use of curved belts is not the invention of the patentees but rather the invention of Hellsund, the applicant here. The Examiner appears to recognize this distinction at pages 6 and 7 of the Examiner's Answer, but goes on to find that it is "obvious" because:

1. Natural curvature is known; and

2. "It is not an unobvious result that continuous casting through a curved path is as feasible as continuous casting through a straight inclined path".

\*    \*    \*    \*    \*    \*

Furthermore, the *acknowledged prior art represented by part of the disclosure of Patent No. 3,376,371 in no way encompasses many of the specific limitations set forth in the appealed claims. For example, the shape of the curve recited in claim 23 is in no way disclosed or suggested by that part of the disclosure of Patent No. 3,376,371 which is available as a reference.*

The board devoted much of its opinion to the determination of "what prior art is available for use, and, if any, the statutory basis on which [it] is [to be] used." The board concluded that the prior invention of Opel was available as prior art by virtue of 35 U.S.C. § 102(g). Before us, appellant argues that the board's holding was in error, and that the Opel patent is not available as prior art.

■ We find no need to treat the board's discussion of 35 U.S.C. § 102(g) in view of the above-quoted portions of appellant's reply brief and the acknowledgments in his application concerning the Opel invention. We are not convinced that the board committed error in holding what appellant has termed "that part of the disclosure of Patent No. 3,-376,371 [the Opel patent] which is available as a reference" to be usable against appellant's invention. In re Garfinkel, 437 F.2d 1000, 58 CCPA 883 (1971); In re LoPresti, 333 F.2d 932, 52 CCPA 755 (1964); *cf.* S. N. Turner, Admissions as Prior Art Under 35 USC 103, 52 J.P.O. S. 249 (1970). Of course, the board did not use that part of the Opel patent which discloses what it acknowledges to be appellant's invention as prior art against the instant claims. See In re Mathews, 408 F.2d 1393, 56 CCPA 1033 (1969); In re Facius, 408 F.2d 1396, 56 CCPA 1348 (1969). As appellant point out, the Opel patent is usable against the instant claims "only insofar as the disclosure therein [is] acknowledged as prior art in the present application."

■ Having decided that Opel was usable as prior art, the board went on to find that appellant's claimed invention would have been obvious in view of Opel. The board considered that "straight or natural sagging, and horizontal or sloping, conveyor belts are all well known as engineering matters." The board discredited appellant's argument that the use of the curved path decreased the necessary height of the casting apparatus by showing that the height of the apparatus used in appellant's example, which utilized a curved path, was actual-

ly *greater* than the height of the apparatus used in an essentially identical process in Opel Example 2, which utilized a straight line inclined path. We agree with the board's reasoning on this issue, and conclude that the claimed invention would have been obvious to one of ordinary skill in the art in view of the portion of the Opel disclosure relied on.

The decision of the board is affirmed.

Affirmed.

RICH, Acting Chief Judge (concurring).

There are several cogent reasons why I cannot join Judge Almond's opinion. I shall first name them and then discuss them.

1. The opinion does not deal with the issue raised by the board's decision and briefed and argued in this court.

2. The opinion does not accurately state the ground of rejection before us and is confusing as to the role played in that rejection by the Opel et al. patent.

3. In accepting appellant's *admissions* as the sole basis for affirming the board and as support for an obviousness rejection under § 103, the opinion goes further than this court has ever gone before, further than the Patent Office has gone, goes contrary to what the Patent Office did in this case, and *creates a very dangerous precedent.* (See 5 below.)

4. The opinion *declines to consider what, if any, statutory basis exists for using an applicant's admission* as establishing "prior art" under § 103. Admitted prior *invention* is not necessarily "prior art" under § 103.

5. By refusing to consider § 102(g) or to relate the use of the admission of prior invention by Opel et al. to it in any way, the opinion *discards safeguards* carefully written into § 102(g) to prevent the use of prior abandoned,

suppressed, or concealed, inventions as "prior art," opening the way to the use of such inventions as "prior art."

### DISCUSSION

It first becomes necessary to state clearly what is the sole rejection on appeal. The rejection is for obviousness under § 103 which says:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and *the prior art* are such that the subject matter as a whole would have been obvious *at the time the invention was made* to a person having ordinary skill in the art to which said subject matter pertains. [My emphasis.]

As the board said,

The major question presented for decision in this appeal is the determination of *what prior art* is available for use and, if any, *the statutory basis* on which [it] is used. [My emphasis.]

We said in In re Hilmer, 359 F.2d 859, 879, 53 CCPA 1288, 1313 (1966):

Much confused thinking could be avoided by realizing that rejections are *based* on statutory provisions, not on references, and that the references merely supply the *evidence* of lack of novelty, obviousness, loss of right or whatever may be the ground of rejection.

We then discussed an illustrative case in which a certain patent was relied on to show *what* invention had been found, in an interference, to be a *prior invention* and pointed out, after using that patent for that limited purpose, that the *"patent* had no relevance *as such."* [1] (As I will show, this has a bearing on what Judge Almond's opinion says about the

---

[1]. While there may be a possibly unique exception to this truism in obviousness-type double patenting rejections, which are based on case law, In re Zickendraht, 319 F.2d 225, 50 CCPA 1529 (1963), concurring opinion, the statement is certainly true of the kind of issues in this case, lack of novelty or obviousness over prior art. These are certainly rejections based on statutory grounds.

Opel et al. *patent*.) The above quotation from *Hilmer* has been applied in In re Land and Rogers, 368 F.2d 866, 875, 54 CCPA 806, 819 (1966); In re Facius, 408 F.2d 1396, 1406, 56 CCPA 1348, 1357 (1969); and In re Bergstrom, 427 F.2d 1394, 1399, 57 CCPA 1240, 1246 (1970).

What, then, is the statutory basis of the rejection before us in this case? All are agreed that Hellsund's claims were rejected for obviousness under § 103 in view of the *prior art*. Judge Almond's opinion correctly states that, "The board concluded that the prior *invention* of Opel was available as prior art by virtue of 35 U.S.C. § 102(g)." (Emphasis mine.)

Since the board's opinion is unpublished[2] and has not been quoted from, we can see what it actually concluded, and what issue was appealed, only by setting forth its reasoning (all emphasis mine):

> The examiner predicates the availability of *the subject matter he is using as prior art* upon paragraphs (a), (f) and (g) of Section 102.

The "subject matter" the examiner was using, as the board had just pointed out, was *the invention* of Opel et al. which was described in their patent (along with Hellsund's invention). Rejection was *not* based on the Opel et al. *patent* as such. The board continued:

> Paragraph (e) of 102 is not applicable since the applications have the same filing date. Paragraph (a), referred to by the Examiner, is not, by itself, considered applicable since the prior knowledge and use referred to in this paragraph is now generally interpreted as referring to *public* prior knowledge and use. Paragraph (f) would be applicable but the use of this paragraph would require that the present applicant had knowledge of the prior subject matter at the time he made his improvement. This may very well

be the case here, but it is unnecessary to consider this matter in view of the presence of paragraph (g) under which this fact would be irrelevant.

Paragraph (g) of Section 102 refers to the prior invention of another. *This paragraph is not restricted to interference proceedings,* but is the basis upon which the defense of prior invention may be raised against the validity of a patent in an infringement suit and which, if proven, would render the patent invalid.

The board cited no precedents in support of the last statement but I will supply some: These two are from the Solicitor's brief: Armour & Company ·v. Swift & Company, 320 F.Supp. 433 (D.C.N.D.Ill.1970), (Findings of Fact 18, 19 and Conclusion of Law 2); Lorenz v. Berkline Corp., 137 USPQ 29 (D.C.N.D. Ill.1963) (Conclusions of Law 11, 17, and 21.) See also Sutter Products Co. v. Pettibone·Mulliken Corp., 428 F.2d 639 (7th Cir. 1970); Grinnell Corp. v. Virginia Electric & Power Co., 277 F.Supp. 507 (E.D.Va.1967). There are others which the Patent Office cited to us. The board opinion continues:

> Normally, this type of rejection is not made in *ex parte* prosecution of applications since necessary evidence relating to prior invention is not at hand and is not searched for as such, and a rejection of this kind is normally only applied when an antecedent interference contest between the same parties has established a prior invention. However, when the facts are matters of record, or acknowledged, or not in dispute, 102(g) *is used as a basis for* rejection in *ex parte* practice. In this particular case there is no dispute as to *the invention of Opel and Bottoms* being prior to the time appellant made his improvement; this *is readily evident from the presentation of the cases and is freely acknowledged* by appellant. * * *

---

2. It would be a public service to publish it in view of the importance of the real issue in this case and in the companion

case of In re Bass, 474 F.2d 1276 (CCPA) decided concurrently.

*The prior art used in this case is the prior invention of Opel and Bottoms, and this is made available by paragraph (g) of Section 102.* The Opel et al. patent and its claims are used for the purpose of delineating this *prior invention * * *. In this sense* the patent is the reference as containing a disclosure of the prior invention.

\*  \*  \*  \*  \*  \*

\* \* \* the *prior invention* of another is acknowledged (or admitted) and the statute *in Section 102* makes the *prior invention* available as prior art.

This, then, was the decision from which appeal was taken to this court. The single reason of appeal filed asserted, inter alia, that the record does *not* permit reliance on the invention disclosed in the Opel et al. patent, "assertedly made available as prior art under 35 U.S.C. § 102(g)." Appellant's brief argues this case on the basis of what the conclusion of that brief says are the "primary issues raised by this appeal," namely "whether or not Section 102(g) has any applicability whatsoever in an *ex parte* proceeding, and, if so, the extent to which Section 102(g) stands as a source of Section 103 prior art." The first two points of the Patent Office brief are:

1. Prior invention by another is a proper basis for ex parte rejection under section 102(g)

2. The facts of the case justify a holding that the pertinent portions of Opel are "prior art" made available under section 102(g).

Judge Almond's opinion declines to deal with these issues raised by the appeal, passing them by with the statement that "We find no need to treat the board's discussion of 35 U.S.C. § 102(g) in view of" Hellsund's admission.

Hellsund's admission goes only to the *existence* of the Opel et al. prior invention. He has vociferously denied in this court that it could be used against him as "prior art" under § 103. Judge Almond's opinion uses admissions about the priority of the Opel et al. invention without answering that argument and without saying what, if any, *statutory* basis exists for using it as § 103 prior art. So far as the opinion goes, the admitted prior invention is used without any statutory basis.

The evident effect, if not the intent, of Judge Almond's reasoning is *to make all admissions by applicants of prior invention by others "prior art" without limitation.* The Patent Office tied *its* use of the Opel et al. prior invention as "prior art" under § 103 to § 102(g) which contains the safeguard that the prior invention is *not* usable, as § 103 "prior art" or otherwise, if "abandoned, suppressed, or concealed." Judge Almond's opinion discards this safeguard. It does not limit use of another's prior invention to § 102(g) or to § 103 but makes it available even for a § 102(a) rejection which the board was careful to limit to knowledge or use which was *public.* Admitted prior invention under this opinion could thus be held to be support for a § 102(a) rejection on the ground that "the invention was known \* \* \* by others in this country \* \* \* before the invention thereof by the applicant" *even though the invention of the other had been abandoned, suppressed, or concealed.* Discovery procedures might well bring to light such prior invention of others. I am not imagining this. The examiner made that very rejection in this case. The Board of Appeals refused to sustain him.

In point (2), supra, I said the role of the Opel and Bottoms patent as a basis for the rejection, as explained in Judge Almond's opinion, is confusing. I will explain why.

In its initial discussion of the rejection, the opinion says: "The rejection of the claims was made on the basis of a patent to Opel et al. (Opel)," and points out in a footnote that the application for that Opel and Bottoms patent was filed on the *same day* as the Hellsund application at bar. Though the opinion does not mention the legal results which necessarily follow from that fact, they are

that the patent is *not* a reference as of its *issue* date (35 U.S.C. § 102(a) or (b)) and *not* a reference as of its *filing* date (35 U.S.C. § 102(e)) to show prior invention. The rejection was not "on the basis of a patent to Opel". It was on the basis of *evidence*, only part of which is in the patent, of a *prior invention* by Opel and Bottoms, and its statutory ground is found in both § 102(g) and § 103. That is what this case is all about. The *priority* of Opel's invention rests entirely on *admissions*, without which the Opel patent would have no effect whatever, but the use of the admissions is predicated on § 102(g) or on nothing.

Finally, I refer to the fact that this court has limited statutory jurisdiction in ex parte patent appeals, limited to review of "the decision of the Board of Appeals," a jurisdiction still further restricted by the points raised by the reasons of appeal. 35 U.S.C. §§ 141–144. Ordinary notions of procedural due process dictate that our decision should be based on and limited to the issues decided below and raised here by the appeal and argued by the parties.

The issue decided below, except for the obviousness question, raised by the solitary reason of appeal, and argued and briefed by the parties, is whether a prior invention of another, made in this country, and established by evidence and admissions of the appellant, constitutes "prior art," within the meaning of that term in § 103, *by virtue of § 102(g)*. My answer to that question is in the affirmative. Judge Almond's opinion finds "no need to treat the board's discussion of 35 U.S.C. § 102(g)." On this point, appellant's brief concludes that "much has been said in this regard—it is time the matter be *decided*." It has now been decided in In re Bass, 474 F. 2d 1276 (CCPA), decided concurrently herewith, but not applied here.

One issue never present or argued in this case is whether all *admitted* prior invention—regardless of abandonment, suppression or concealment—is to be considered "Prior art" under § 103. If

there had ever been such an issue, we surely would have had arguments that we have not had; yet, without benefit of argument, that is what Judge Almond's opinion seems to regard as the law. The opinion cites In re LoPresti and In re Garfinkel, neither of which cases has ever been considered to stand for any such broad proposition. Of course, the article cited, by Turner, whose qualifications are missing, is authority for nothing. It is mere discussion and speculation. In *Garfinkel* we said (437 F.2d at 1004, 58 CCPA at 887):

> Because appellant has from the beginning treated the information in Kistler [a publication] as "prior art,"[2] we will do likewise.

2. From the record we are uncertain whether the type of "prior art" referred to is of the § 102(f) or § 102(g) variety or whether it is of the "known * * * in this country" type as in § 102(a). What is clear, however, is that appellant has admitted that as to him the information in Kistler is *prior art* of some type. [My emphasis.]

By contrast, Hellsund has argued from the beginning of this case that the Opel and Bottoms prior invention is *not* "prior art" under any part of the statute. In *LoPresti* we said "The Craggs and McCann patent * * * is prior art as expressly provided in 35 USC 102(e)." Rule 131 affidavits overcame it *as such* but *LoPresti* admitted in his application and brief that his invention was an improvement upon the prior Craggs and McCann invention as disclosed in the § 102(e) reference patent. We used that admitted prior invention as a basis for affirming a § 103 rejection. We neglected to say what section of the statute authorized us to use the admitted prior invention as § 103 prior art. We considered that we had the patent before us as "prior ·art" under § 102(e) and we said "the case must be decided on the assumption it is prior art notwithstanding the affidavits." It is not one of our better-reasoned opinions and has long been an anomaly in the law. The board opinion in this case has

bailed us out, saying, in discussing *LoPresti*,

> Our analysis of the question merely expands the court's condensed reference to an admission of prior art *and gives the statutory basis* [§ 102(g)]; the prior invention of another is acknowledged (or admitted) *and the statute* in Section 102 *makes the prior invention available as prior art.* [Emphasis mine.]

The present case is the first in which it has been proposed to altogether *detach* admitted prior invention of another from the statute, relying only on the *admission* without any statutory basis whatsoever for doing so. In *Garfinkel* we were sure a basis was to be found somewhere in § 102; in *LoPresti* we thought we had it in § 102(e). In Judge Almond's opinion it is said to be unnecessary to discuss § 102(g), the only part of the statute which authorizes use of Opel's invention as prior art. I consider that a very dangerous legal proposition for the reasons hereinabove stated.

Since I consider the Opel and Bottoms prior invention to be available under § 102(g) and § 103 "prior art" and as I agree that Hellsund's invention has been shown to be obvious within the terms of § 103, I agree to affirmance.

It will be evident from the opinions in the case of In re Bass, 474 F.2d 1276 (CCPA), decided concurrently herewith, that a majority of the court deciding that case holds the view that prior invention of another within the terms of § 102(g) constitutes "prior art" under § 103. I deem it to be in the best interest of a sound patent system to make that point entirely clear and to base rejections on *statutory* grounds whenever they apply. I consider it highly undesirable to affirm a rejection which was squarely based on the statute on an applicant's admission without tying it to any statutory provision, as is being done here, for the reasons I have stated. An admission of *prior invention,* as distinguished from an admission of *"prior art,"* is not enough to create a statutory ground of rejection and the opinion here leaves the law afloat without compass or rudder. The *Bass* majority opinion also contains an analysis of § 102 which answers some comments in Judge Baldwin's concurring opinion in this case.

BALDWIN, Judge (concurring).

I fully agree with the majority opinion. I would add some further observations.

The majority opinion merely follows In re LoPresti, 333 F.2d 932, 52 CCPA 755 (1964) and In re Garfinkel, 437 F.2d 1000, 58 CCPA 883 (1971). In view of the language in appellant's reply brief before the board it cannot seriously be questioned that appellant has admitted that part of the disclosure of the Opel patent is available as *prior art* for the purposes of the section 103 rejection. That being the case, *LoPresti* and *Garfinkel* are in point and controlling. No substantial reason has been advanced why those cases should be overruled.

The statutory basis for the rejection before us is 35 U.S.C. § 103. I wish to point out that the present case, *LoPresti* and *Garfinkel* are all fully consistent with, and lend some support for, my interpretation of that section of the statute, particularly with regard to the meaning of the term "prior art" as used therein. Nowhere in the 1952 Act is it stated that the term "prior art" as used in section 103 is *defined* by section 102. After reviewing the legislative history of the 1952 Act, especially sections 102 and 103,[1] I have concluded that the term was used in section 103 as a term of art. That is, the drafters intended the term "prior art" to have the same meaning in section 103 as had been established by the courts over the years, rather than giving it some special meaning to be defined in the statute. Since section 102 does not define what is "prior art," ma-

---

1. See my concurring opinion in In re Bass, 474 F.2d 1276 (CCPA), decided concurrently herewith.

terial may be "prior art" within the meaning of section 103 although that material is not mentioned in section 102. Likewise, while much of what *is* mentioned as defeating novelty or establishing loss of right under section 102 is also "prior art" under section 103, much of section 102 deals with matter which is not prior art at all. Section 102(c) is one obvious example. I contend that section 102(g) is another. I am aware, of course, that my view of the statute is not absolutely compelled by *LoPresti, Garfinkel* and the present case.[2]

With regard to the other concurring opinion, most of the arguments made therein fall of their own weight. I would point out that appellant's sole reason for appeal was clearly intentionally drawn with language broad enough to claim error in the use of any part of the Opel patent as prior art on *any* basis.[3] Such a broad reason of appeal is to be expected, since the board found it unnecessary to consider all of the bases upon which the examiner concluded that part of the Opel patent was available as prior art. While it is true that large parts of the parties' briefs are devoted to the question of whether prior invention under section 102(g) is prior art under section 103, the parties, by agreeing that that issue is presented, cannot compel us to act as if appellant's admissions had never been made.

The other concurring opinion states that *LoPresti* "is not one of our better-

reasoned opinons and has long been an anomaly in the law." That case was cited by the board as support for the proposition that prior invention under section 102(g) is prior art within the meaning of section 103, and it has been cited elsewhere for the same proposition. The other concurring opinion apparently condones the board's *infusion* of a section 102(g) rejection into the *LoPresti* case some five years *after* that case was decided. There was no section 102(g) rejection in that case, and the Rule 131 affidavit had removed section 102(e) as a basis for rejection. There, as here, the *statutory basis* for the rejection was section 103, and the "prior art" used was that which appellants had *admitted* was *prior art*. It is submitted that the *LoPresti* decision as handed down by this court, and not as the board endeavored to amend it, is controlling in this case. We can not ignore appellant's admissions that part of the disclosure of the Opel patent is prior art.

I additionally note that it has been the practice in this court in separate opinions, either concurring or dissenting, to refer to the opinion concurred in or dissented from as "the *majority* opinion" if it represents the majority view of the court, or as "the *principal* opinion" if it represents a minority view but contains the recitation of the facts necessary for understanding of the case. It is elementary that the opinions of this court speak for those judges who voted for them, and not just for their authors.

---

2. That matter *not mentioned* in section 102 may be prior art is at least implied in the statement in In re Harry that:
Thus "prior art" means at least those things named in section 102.
333 F.2d 920, 923, n. 2, 51 CCPA 1541, 1546, n. 2 (1964). Of course, I disagree with that reasoning.

3. The reason of appeal reads as follows:
1. In rejecting claims 1, 2, 4, 7–10, 21, 22 and 23, as unpatentable as obvious in view of the invention of Opel and

Bottoms disclosed in Opel et al. Patent 3,376,371 assertedly made available as prior art under 35 U.S.C. § 102(g). The record does not permit reliance upon Opel et al. Patent 3,376,371, or the invention disclosed therein as prior art and the terminal disclaimer filed in the present application precludes reliance on the claims of Opel et al. as a ground of rejection. Furthermore, the appealed claims are not obvious in view of the invention of Opel et al.