In re Gary W. FOUT, Abraham R. Mishkin, and Rathindra N. Roychoudhury.

Appeal No. 81–547.

United States Court of Customs and Patent Appeals.

April 8, 1982.

Rehearing Denied June 17, 1982.

298

William H. Vogt, III, Morris N. Reinisch and Marcus J. Millet, White Plains, N. Y., for appellants.

Joseph F. Nakamura, Sol., and Gerald H. Bjorge, Associate Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") holding claims 1–20 in appellants' application[1] obvious under 35 U.S.C. § 103. We affirm.

## BACKGROUND

### The Invention

Appellants claim an improvement over the process of Pagliaro et al. ("Pagliaro") which was the subject of our decision in *In re Pagliaro*, 657 F.2d 1219, 210 USPQ 888 (CCPA 1981). The Pagliaro process is a method for producing a decaffeinated vegetable material such as coffee or tea. A fatty material is used to extract caffeine from the vegetable material. The caffeine-laden fatty material is separated from the vegetable material and may be regenerated by contacting it with water, which reduces its caffeine content. The resultant aqueous solution may then be treated to recover caffeine. The Pagliaro process, minus the regeneration step, is set forth in the preamble of appellants' Jepson-format claims. Appellants describe and claim their invention as an improvement over the Pagliaro process which comprises regenerating the fatty material by evaporative distillation instead of aqueous extraction. Claim 1 is representative:

> *In a process* for producing a decaffeinated vegetable material suitable for consumption in beverage form wherein caffeine-containing vegetable material is extracted with a volume of recirculating liquid, water-immiscible edible fatty material in a decaffeination zone for a period of time sufficient to transfer caffeine from said vegetable material into said fatty material, and wherein the caffeine-laden fatty material resultant from extraction is separated from said vegetable material and is conveyed to a regeneration zone for removal of caffeine prior to recirculation to said decaffeination zone, *the improvement which comprises* subjecting the caffeine-laden fatty material in said zone to regenerative vaporization conditions such as to vaporize caffeine from said fatty material and further to vaporize from said fatty material any fatty material degradation products present therein. [Emphasis added.]

Dependent claims 2–6, 8–10, 12–14, 19, and 20 contain various limitations that specify fatty material, vegetable material, time, and temperature and that the caffeine be evaporated from a thin film of fatty material. Claims 7, 11, 15, and 16 specify that a carrier gas be passed over the fatty material to increase the rate of removal of caffeine. Claims 17 and 18 specify the moisture content of the coffee beans.

### The References

Waterman et al. ("Waterman"), U. S. patent No. 2,129,596, teaches suspending solid material in vegetable oil, then subjecting the material to evaporative distillation.

---

1. Application serial No. 762,734, for "Decaffeination Process," filed January 26, 1977; continuation of application serial No. 638,357, filed December 8, 1975.

Evaporative distillation is accomplished by heating the oil-solid mixture in a vacuum. The mixture may be in the form of a film. The reference states: "Solid alkaloids usually regarded as non-volatile, such as caffeine may be recovered in pure form under the present invention, avoiding the usual more tedious physical and chemical processes. Fine ground tea or coffee is suspended in oil and transmitted through the still, the alkaloids distilling over and being condensed."

Barch, U. S. patent No. 2,817,588, teaches a decaffeination process in which caffeine is removed from a solvent by evaporating the solvent, which is then recirculated.

Bergell, U. S. patent No. 1,996,852, teaches the use of a carrier gas to enhance removal of vaporizable materials from liquids. Bergell also teaches that fatty acids can be removed from neutral oils by evaporative distillation.

Dunning et al. U. S. patent No. 2,779,724, also teaches the use of a carrier gas such as steam in thin film evaporative distillation.

Mitchell et al., U. S. patent No. 3,682,648, teaches controlling the moisture content of coffee beans which are to be extracted with an ester solvent.

*The Rejection*

The examiner maintained that because the preamble of the claims is in Jepson format, it sets forth "that which is known." Claims 1–6, 8–10, 12–14, 19, and 20 were rejected on the preamble in view of Barch and Waterman. Claims 7, 11, 15, and 16 were rejected on Barch and Waterman in view of Bergell or Dunning et al.; claim 17 was rejected on those four references in view of Mitchell et al.; and claim 18 was rejected on the references applied to claim 1 in view of Mitchell et al.

*The Board's Decision*

The board affirmed the examiner's rejections and adopted his reasoning as its own. As to whether the preamble portion of the claims was available as prior art, the board stated:

> The essence of appellants' position appears to be that the process steps set forth in the preamble portion of claim 1 may not in any way be used as prior art against the presently claimed subject matter, since such steps were not patented or described in a printed publication in this or a foreign country, nor were they publicly known or practiced in this country, more than one year prior to the effective filing date of this application. Appellants' contentions are without merit.

It is well established that the use of Jepson format is, in effect, an admission by appellants that the process steps recited in the preamble are known in the art, leaving for consideration whether the recitation following the improvement clause imparts patentability to the claims. Moreover, appellants readily acknowledge that they did not invent the process of decaffeinating a vegetable material with an edible fatty material, which process is summarized in the preamble of claim 1, note page 2, last three lines of the Reply Brief. In view of the foregoing admission, the steps set forth in the preamble of claim 1 may be considered prior art for any purpose, including as evidence of obviousness under 35 USC 103. Appellants have conceded what is to be considered as prior art in determining the obviousness of their improvement.

*Issues*

The issues presented are: (1) whether the Pagliaro invention, set forth in the preamble, constitutes "prior art" under 35 U.S.C. § 103, and (2) if so, whether the subject matter claimed would have been obvious to a person of ordinary skill in the art at the time the invention was made in view of that prior art and the references of record.

OPINION

1. *The Pagliaro Invention*

■ The Solicitor contends that appellants' use of the Jepson format preamble in claim 1 constitutes an admission that the Pagliaro process described in the preamble is prior art to them. Appellants do not

dispute that the Pagliaro process was prior to their invention and that they had knowledge of it before making their invention. That process is what was before us in the 1981 *Pagliaro* case, *supra*, and appellants specifically refer to the applications describing it in the application now before us. They then describe the presently claimed invention as "an improved means for regenerating used fatty material employed in the decaffeination .of vegetable materials." That improved means is then stated to be "removing the caffeine by vaporization." In other words, they have invented an improvement on the last step of the Pagliaro process, the removal from the fatty material of the caffeine, and, coincidentally, any degradation products which may be present. Appellants' brief concedes:

> The board's opinion stated (correctly, we emphasize), "appellants readily acknowledge that they did not invent the process of decaffeinating a vegetable material with an edible fatty material, which process is summarized in the preamble of claim 1."

What appellants argue is that the above concession is not an admission that said decaffeination process is "legally available as prior art against the claims," and that the PTO's position is in conflict with the decision of this court in *In re Ehrreich*, 590 F.2d 902, 200 USPQ 504 (CCPA 1979).[2] Thus, the first issue is raised.

**2.** However, as stated in *In re Ehrreich*, the preamble of a Jepson claim is *impliedly* admitted to be prior art. In that case, the implication was overcome by appellants' explanation that the Jepson format was used to avoid a double patenting rejection in *their own* copending case. Here, appellants argue that the Jepson format was used to maintain a clear line of demarcation between their invention and the invention claimed in the *commonly assigned* Pagliaro application. Absent a statutory bar under 35 U.S.C. § 102(b), (c), or (d), an applicant's own invention cannot be "prior art" to him. However, applications having the same inventor and claiming the same invention are subject to rejection for double patenting. In contrast, if the inventors are different, no such rejection can be made; rather, an interference is in order. Appellants' assertion that there is no substantive distinction between the two situations is without merit.

■ The way appellants state the issue is: "The preamble of appellants' own claims cannot properly be used as a reference against them." However, more is involved than the claim preamble. Claims must always be read in the light of the specification. Here, the specification makes plain what appellants did and did not invent, as we have noted above, and the claims, taken as a whole, are entirely consistent therewith. Appellants in their brief concede what they did *not* invent, leaving only the question of law—whether we can use the Pagliaro invention described in the preamble as "prior art" under section 103.

■ This court has recognized that section 102 is not the *only* source of section 103 prior art.[3] Valid prior art may be created by the admissions of the parties. *See In re Nomiya*, 509 F.2d 566, 570–71, 184 USPQ 607, 611 (CCPA 1975); *In re Hellsund, supra*, 59 CCPA note 3 at 1387, 474 F.2d at 1311, 177 USPQ at 173; *In re Bass*, 59 CCPA 1342, 474 F.2d 1276, 177 USPQ 178 (1973); *In re Garfinkel*, 58 CCPA 883, 887, 437 F.2d 1000, 1004, 168 USPQ 659, 662 (1971); *In re LoPresti*, 52 CCPA 755, 333 F.2d 932, 142 USPQ 176 (1964); Turner, *Admissions as Prior Art Under 35 USC 103*, 52 J.Pat.Off.Soc'y 249 (1970). Nor is it disputed that certain art may be prior art to one inventive entity, but not to the pub-

**3.** *Cf.* the concurring opinion of Judge Baldwin in *In re Hellsund*, 59 CCPA 1382, 1394–95, 474 F.2d 1307, 1316–17, 177 USPQ 170, 177 (1973), *supra* :

> I have concluded that the term ["prior art"] was used in section 103 as a term of art. That is, the drafters intended the term "prior art" to have the same meaning in section 103 as had been established by the courts over the years, rather than giving it some special meaning to be defined in the statute. Since section 102 does not define what is "prior art," material may be "prior art" within the meaning of section 103 although that material is not mentioned in section 102. Likewise, while much of what *is* mentioned as defeating novelty or establishing loss of right under section 102 is also "prior art" under section 103, much of section 102 deals with matter which is not prior art at all. Section 102(c) [relating to abandonment] is one obvious example.

lic in general. *See In re Nomiya, supra,* 509 F.2d at 571 n.5, 184 USPQ at 611 n.4 (both footnotes are the same, despite the different numbering).

■ We hold that appellants' admission that they had actual knowledge of the prior Pagliaro invention described in the preamble constitutes an admission that it is prior art to them. The Pagliaro process was appellants' acknowledged point of departure, and the implied admission that the Jepson format preamble of claim 1 describes prior art has not been overcome. It is not unfair or contrary to the policy of the patent system[4] that appellants' invention be judged on obviousness against their actual contribution to the art.

### 2. *Obviousness*

■ Having established that the Pagliaro process is prior art, our next inquiry is whether appellants' invention as a whole would have been obvious to a person of ordinary skill in the art in view of that process and the other cited references.

Pagliaro teaches a process identical to the process of instant claim 1, except that in the Pagliaro process the step of regenerating the caffeine-laden fatty material comprises removing caffeine by aqueous extraction rather than by evaporative distillation. That Waterman does not teach isolation of caffeine from coffee by extraction using a fatty material followed by separation of the coffee and fatty material is of no consequence, because these steps are taught by Pagliaro. That Waterman suspends coffee in oil or fatty material and *directly* distills caffeine out of the coffee and through the oil is also immaterial.

The crucial question is whether Waterman teaches that caffeine can be separated from oil by evaporative distillation. We are persuaded that one of ordinary skill in the art would have recognized that if, under given conditions of temperature and pressure, caffeine could be distilled from coffee in oil, then *a fortiori* caffeine could

be distilled from oil containing caffeine but not coffee. Additionally, Pagliaro teaches that vegetable oil extracts caffeine from coffee. Therefore, regardless of Waterman's silence on the point, one of ordinary skill in the art would have understood that caffeine is transferred from the coffee to the oil in the Waterman process before being distilled therefrom.

■ Because both Pagliaro and Waterman teach a method for separating caffeine from oil, it would have been prima facie obvious to substitute one method for the other. Express suggestion to substitute one equivalent for another need not be present to render such substitution obvious. *In re Siebentritt,* 54 CCPA 1083, 372 F.2d 566, 152 USPQ 618 (1967). Nevertheless, a reason for making the substitution is provided by Waterman, who states: "[C]affeine may be recovered in pure form under the present invention, avoiding the usual more tedious physical and chemical processes." It is to be noted that, in the Pagliaro process, a caffeine/water solution is obtained that would require further processing to recover pure caffeine.

Appellants' argument that Pagliaro and Waterman are nonanalogous art is without merit, because both Pagliaro and Waterman are concerned with the identical field of endeavor—separating caffeine from coffee and from oil. *See In re Pagliaro, supra,* 657 F.2d at 1224–25, 210 USPQ at 892 (CCPA 1981).

Appellants argue that no removal of fatty acid degradation products is disclosed by Waterman. However, this "limitation" is insufficient to render the claims unobvious. First, the claims merely require that "any fatty material degradation products present" in the fatty material be vaporized. A situation where no such degradation products are present is not excluded, so that the claims read on a process where no degradation products are removed. Second, the PTO's position that the degradation

---

4. *See* Chisum, *Prior Invention and Patentability,* 63 J.Pat.Off.Soc'y 397, 412–17 (1981).

products would inherently and expectedly vaporize under the conditions used to vaporize the caffeine stands unrebutted. Third, Bergell teaches the removal of fatty acids[5] from neutral oils by evaporative distillation and exemplifies the use of this technique to remove odoriferous substances from ground nut oil. Thus, the prior art suggests using evaporative distillation to remove degradation products from oils, and the simultaneous removal of caffeine and degradation products when using Waterman's technique would have been expected.

Finally, we agree with the board that the various process limitations set forth in the dependent claims would have been obvious to a person of ordinary skill in the art in view of the references cited against the claims.

The decision of the board is affirmed.

AFFIRMED.

5. Appellants' application discloses that fatty acids are degradation products of the triglycerides of which the fatty materials are primarily composed and that such fatty acids are separated from the neutral triglyceride oils during the vaporization of the caffeine.