861 F.2d 729
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
KEY TRONIC CORPORATION, Plaintiff-Appellee,
v.
BURROUGHS CORPORATION, Defendant-Appellant.
Charles W. Bradley, Intervenor.
 No. 88-1145.
 United States Court of Appeals, Federal Circuit.
 Sept. 30, 1988.
 
 Before FRIEDMAN, PAULINE NEWMAN and ARCHER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 The judgment of the United States District Court for the Eastern District of Washington finding claims 9, 18 and 24 of U.S. Patent No. RE 31,942 (Klehm), assigned to Burroughs Corporation, invalid is affirmed.
 
 OPINION
 
 2
 Key Tronic Corporation (Key Tronic) sued Burroughs Corporation (Burroughs) seeking a declaration of invalidity, unenforceability and noninfringement of the original Klehm patent. Burroughs counterclaimed for infringement. When the Klehm patent reissued it was substituted for the original Klehm patent as the patent-in-suit. The claims of the Klehm reissue patent are directed toward a code signal sender or a keyboard for the generation of data.
 
 
 3
 The district court found claims 9 and 18 to be anticipated by RIS, Poli or Hollands, 35 U.S.C. Sec. 102 (1982), and claims 9, 18 and 24 of Klehm to be obvious in view of Nichols (Fairchild) and Ackerman, 35 U.S.C. Sec. 103 (1982 and Supp. IV 1986).
 
 
 4
 Burroughs argues that the district court erroneously determined that claims 9 and 18 are not limited to the use of a keyboard and as a result erred in finding these claims anticipated by RIS, Poli, or Hollands.
 
 
 5
 "Claim construction is reviewed as a matter of law. [Citation omitted.] However, interpretation of a claim may depend on evidentiary material about which there is a factual dispute, requiring resolution of factual issues as a basis for interpretation of the claim." Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.1988).
 
 
 6
 Claims 9 and 18 do not use the term "keyboard" but instead use the term "code signal sender." Burroughs contends, however, that the prosecution history of the original Klehm patent, the Klehm reissue patent specification, the reissue prosecution history and testimony at trial demonstrate that these claims should be limited to a keyboard. Burroughs points to no statement by the applicants during the prosecution or in the specification indicating that "code signal sender" was meant to be limited to a keyboard. Instead, its argument essentially is that both Burroughs and the examiner in the reissue proceeding assumed that "code signal sender" means keyboard. An assumption whether by an examiner or by an applicant is insufficient to redefine a term of a claim. Thus, we are not persuaded that the prosecution history or specification should be viewed as requiring that "code signal sender" be limited to a keyboard or that these claims otherwise be limited to the use of a keyboard.
 
 
 7
 We also note that claim 11 (which is dependent on claim 9), as well as other claims in the patent, specifically recite a "keyboard." The doctrine of claim differentiation counsels that when a broad term is used in one claim and a narrower term is used in another, the terms should not be interpreted identically. Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987). Thus, to interpret "code signal sender" as meaning "keyboard" when these terms are used alternatively would be inconsistent with the doctrine of claim differentiation.
 
 
 8
 The district court similarly did not err in finding claim 24* would have been obvious over the Ackerman and Nichols references in combination. The invention of claim 24 differs from Ackerman in the serial scanning circuit. The district court combined the serial scanning circuit of Nichols with Ackerman's electronic memory roll-over circuitry to find claim 24 obvious.
 
 
 9
 Burroughs argues that the combination of Nichols and Ackerman would not have been obvious because there was no suggestion in the technical descriptions of the Ackerman and Nichols keyboards to combine them. An express suggestion, however, is not required; it is sufficient that there is an incentive in the prior art to make the modification. In re Fout, 675 F.2d 297, 301, 213 USPQ 532, 536 (CCPA 1982) ("Express suggestion to substitute an equivalent for another need not be present to render such substitution obvious."); ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984) ("Under section 103, teachings of references can be combined only if there is some suggestion or incentive to do so.")
 
 
 10
 The district court found that "[v]arious methods of scanning switches were well known in the art. The significant factor was the function; the method of scanning was not of great significance." It also found that the inventor simply "took known components and known functions and combined them. [Footnote omitted.] That is precisely what everyone else in the industry did." The court noted that there was "a sudden demand for electronic keyboards, [an] equally sudden availability of the inexpensive technology (the micro chip), ... simultaneous independent development by others, and ... everyone who tried succeeded." The district court stated:
 
 
 11
 [i]n the broad code signal send [sic: sender] prior art, all of the components of the claimed invention are shown in the very combination claimed and produce the same functional result as N-key rollover. In the keyboard prior art, the Ackerman keyboard shows the combination of a scanning circuit, a status memory and a comparator for achieving N-key rollover. The Nichols keyboard teaches an alternate form of a scanning circuit--a matrix scanning circuit--which was then recognized as advantageous for keyboards with a large number of key switches since it minimized the number of connections required between the key switches and the electronic circuitry. Both the Ackerman scanning circuit, which is well-suited to the smaller "10 key" keyboards which do not require as many connections between the key switches and the electronic circuitry, and the Nichols scanning circuit provide a serial pulse train output. It would have been obvious to one of ordinary skill in the art at the time of the Klehm invention to substitute the Nichols scanning circuit for the Ackerman scanning circuit to provide a large keyboard with N-key rollover in order to obtain the advantage of the fewer number of connections between the key switches and the electronic circuitry provided by the Nichols scanning circuit.
 
 
 12
 In view of the court's findings and analysis, Burroughs' argument that it would not have been obvious in the prior art to combine Nichols and Ackerman is unpersuasive.
 
 
 13
 Accordingly, the decision of the district court that claims 9, 18 and 24 are invalid is affirmed on the basis of the court's opinion dated September 21, 1987.
 
 COSTS
 
 14
 Costs to Key Tronic, except that Key Tronic shall bear the cost of producing the portion of the Appendix referred to in footnote 5 on pages 6-7 of Key Tronic's responsive brief. Burroughs' Motion to Strike and to Tax Cost is otherwise denied.
 
 
 15
 PAULINE NEWMAN, Circuit Judge, concurring-in-part, dissenting in part.
 
 
 16
 I join the court's decision as to claims 9 and 18, which I believe were correctly construed as not limited to keyboards. Having obtained claims of broader scope, the applicant acquired the risk that prior art might be deemed invalidating within that enlarged scope.
 
 
 17
 I respectfully dissent from the court's affirmance of the decision as to claim 24, which is specific to keyboards. The subject matter of claim 24 is removed from the non-keyboard (RIS) and non-scanning (Ackerman) prior art. Claim 24 has not been shown to have been obvious in view of the cited references, and indeed defines a significant contribution thereover. The "incentive" to make the combination derives from hindsight, Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 227 USPQ 543 (Fed.Cir.1985), and indeed claim 24 does not define a simple combination of known elements. In my view there was not clear and convincing evidence sufficient to overcome the presumption of validity as to claim 24.
 
 
 18
 I also would reverse the district court's finding of non-infringement of claim 24, for each element of the claim is found in the particular Key Tronic models. Serial scanning is performed in the accused devices, and Key Tronic's use of validation circuitry or other extra scan cycles does not avoid infringement. See A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 218 USPQ 965 (Fed.Cir.1983), cert. denied, 464 U.S. 1042 (1984).
 
 
 19
 In ascertaining whether the inclusion of microprocessor technology in the Type VII devices avoids infringement, it is appropriate to determine whether the later-developed technology is equivalent to that which it replaces. Any changed elements in the accused devices are viewed, in the context in which they appear, relative to the claimed invention as a whole. Texas Instruments, Inc. v. United States Int'l Trade Comm'n, 805 F.2d 1558, 231 USPQ 833 (Fed.Cir.1986), reh'g denied, 846 F.2d 1369, 6 USPQ2d 1886 (Fed.Cir.1988). In this case the replacement of hard-wired logic circuitry with computer logic circuitry, performing substantially the same functions in substantially the same way, meets the classical requirements of equivalency as discussed in Graver Tank, Inc. v. Linde Air Products, 339 U.S. 605 (1950).
 
 
 
 *
 In view of our agreement with the district court's holding that claims 9 and 18 were anticipated, we need not consider the district court's obviousness determination with respect to those claims