David COHN, Plaintiff-Appellant,

v.

COLECO INDUSTRIES, INC., Defendant-Appellee.

No. 959, Docket 76–7563.

United States Court of Appeals, Second Circuit.

Argued April 28, 1977.

Decided June 3, 1977.

Kenneth E. Macklin, White Plains, N. Y. (Paul H. Heller, Kenyon & Kenyon, Reilly, Carr & Chapin, New York City, of counsel), for plaintiff-appellant.

Peter L. Costas, Hartford, Conn. (Stanley L. Kantor, Forsythe, LeViness & Pearson, New York City, of counsel), for defendant-appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff, David Cohn, brought this action against the defendant, Coleco Industries, seeking an injunction and an accounting as a result of defendant's alleged infringement of a patent for a toy bowling game. Defendant moved for summary judgment on the ground that the doctrine of file wrapper estoppel barred this action. The United States District Court for the Southern District of New York, Whitman Knapp, *Judge,* granted the motion and dismissed the complaint. We affirm.

During the 1950s plaintiff invented a toy bowling game. It was designed to simulate the play action of regulation bowling. The game is played in the same way regulation bowling is played, i. e., by rolling a ball at a group of tenpins assembled in a triangle, the object being to strike as many of the pins as possible. As with regulation bowling, struck pins must be removed from the playing surface and reassembled in a triangle after each frame. The device Cohn designed performed the removal and resetting functions through the combined use of magnets, elastic strings and springs. For convenience, an illustration of the device is provided below.

Reset Plate (1)
Compression Springs &
    Guide Rods (3)
Elastic Strings (10)
Guide Plate (1)
U-Shaped Frame (1)
Bowling Pins (10)
Base Plate (1)
Flat Surface (e.g.,
    Floor)

The game can be set up on any long, flat surface, such as a floor. The base of the game is made of sheet steel, so that magnets will be attracted to it. The tenpins are made of plastic, and magnets are glued to their bases. These magnets hold the pins on the base plate until they are struck with sufficient force to break the magnetic attraction. When the magnetic force is broken, the pin is lifted off the base plate by means of an elastic string upon which it is tethered. The strings are attached to a reset plate held above the base plate. It is in this way that the Cohn device performs the removal function mentioned above.

In order to reset the pins effectively, two things must be done. First, the pins must be lowered back to the base plate so that they are assembled in a relatively precise triangle. Second, the elastic strings must be stretched so that they can again lift the pins off the playing surface when the pins are struck. The first is accomplished by means of a guide plate with ten holes in a triangular pattern. When the reset plate, to which the strings are attached, is lowered toward the base plate, the elastic strings, which are now contracted, pass through the holes in the guide plate and lower the pins in a triangle. The second is accomplished by means of compression springs placed between the reset plate and the guide plate. The guide plate is immobile, and is set at a fixed distance above the base plate on a U-shaped frame. The reset plate can be moved in order to lower the pins back to the base plate. Normally, the reset plate rests on compression springs a fixed distance from the guide plate. When the pins are reset, however, the player pushes the reset plate downward against the compression springs until the pins are lowered to the base plate. When the player releases his pressure, the compression springs push the reset plate back to its original position and thereby stretch the elastic strings. In this way, the pins are reset, and the game is readied for another frame.

Plaintiff applied for a patent on this device in 1958. Among the claims he made was the following:

A toy bowling game comprising a flat metal base of magnetic material having an extensive upper surface; a supporting member [reset plate] secured to the said base and extending over the latter in a spaced relation thereto; a bowling pin having a permanent magnet provided with north and south poles disposed at its base to enable the pin to be attracted to and supported on the flat base plate in upright position; and an elastic string secured to the tip of the bowling pin and to the said supporting member [reset plate] extending over the base, said string having a length and strength such that when only slightly extended it will maintain the bowling pin raised above and out of contact with the said metal base, and when more fully extended it will permit the magnet on the bowling pin to contact the metal base, said pin being supported thereby in upright position and said magnet resisting removal of the pin from the base by the said elastic string.

Before plaintiff obtained a patent on his device, however, his claims were substantially narrowed. Bowling devices are hardly a development of the 1950s. Indeed, the file of plaintiff's patent cites references dating back to 1918. The game itself, of course, has ancient origins. The prior art contained both bowling games and pin-setting devices. Some of these incorporated magnets, elastic strings and springs, either singly or in combination. A patent granted to Lloyd in 1940 utilized pins tethered on elastic strings which were attracted to the base plate of his game by means of magnetism. A patent granted to Hedenskoog in 1944 utilized compression springs instead of elastic string. His device used a guide that functions somewhat like plaintiff's guide plate. However, Hedenskoog did not use magnets, and his failure to use elastic string deprived the pins of freedom of movement. A patent granted to Igou in 1933 for a pin-setting device shows a spring-biased setting device that operates by means of pushing downwards on a handlebar against a tension spring. When the operator releases his pressure on the bar, the tension spring contracts, thereby raising the setting device. The Igou device is illustrated below.

Handle Bar

Tension Springs

Pin-Setting Mechanism

Bowling Pins

The patent examiner rejected plaintiff's claims as unpatentable in light of Lloyd, Hedenskoog and Igou. In response, plaintiff amended his claims to specify that the reset plate was "spring-urged," *i. e.*, the compression springs between the guide plate and the reset plate hold the reset plate up. The amended claim recited the fact that the springs automatically returned the reset plate to its normal position a fixed distance above the guide plate. Despite these amendments, the examiner rejected the claims on October 26, 1960. In response to this rejection, plaintiff amended his claim to further emphasize the manner in which the compression springs normally "urged" the reset plate away from the base plate. Plaintiff's attorney distinguished the Igou device on the ground that it operated by means of pushing down against and stretching tension springs, while plaintiff's device operated by means of pushing down against and compressing compression springs. Specifically, he made the following argument: "regardless of the showing of springs in Igou, such springs do not

operate in the same manner as does [sic] the springs of applicant. The springs in the patent *pull* up, in applicant's claims the springs *push* up." (emphasis added). Plaintiff's bowling game was eventually patented on January 30, 1962.

In late 1973 plaintiff saw a picture on a box in a department store window. The picture was of a bowling game that he considered to be similar to his own. Plain-tiff then offered a license to defendant Coleco, the manufacturer of the game. However, defendant considered its game to be quite different from that of plaintiff, and therefore declined his offer of a license. This action was instituted seventeen months later. The illustration below depicts the alleged infringing device—the "Bowl-A-Matic 300."

As can be seen from the illustration above, the Coleco game includes both a playing surface and a pin-setting device. The entire game is roughly four feet in length. Towards the front, there is a handle which is connected, by means of a string running under the playing surface, to the pin-setting mechanism in the back of the game. The operation of the pin-setting mechanism is illustrated by the diagram below.

Each of the ten bowling pins is tethered on a string which is attached to a tension spring located in the back of the game. The pins are held down on the playing surface by means of magnets implanted in the playing surface itself. When struck, the pins are lifted by the contracting action of the tension springs. Each of the ten tension springs is attached to a horizontal bar. It is to this bar that the string running under the playing surface is connected. By moving the handle in the front of the game, a player can cause the horizontal bar to move either up or down in back of the game. By moving the bar up, the pins can be lowered back to the playing surface. By moving the bar down, the tension springs can be stretched, thereby readying them for another round of play. In order to make the horizontal bar move upward when the handle in the front is moved, the game incorporates two additional tension springs. These springs are attached to the horizontal bar, like the others, but they are fastened to the top of the game itself, rather than to the strings attached to the bowling pins. When the game is set for play, these two springs are stretched. During the resetting operation, when the handle in the front is moved, the string running under the game is slackened, and the tension in the springs is relieved. The springs then contract, pull the bar upward, and lower the pins to the playing surface.

From the foregoing discussion, certain important conclusions emerge. First, the Igou patent had tension springs that pulled up the resetting bar; to reset the pins, the player pushed down and stretched the springs. Second, in order to obtain his patent, plaintiff narrowed his claim in such a way as to define allowable subject matter; specifically, he urged that his compression springs pushed the reset plate upward; to reset the pins the player pushed down and compressed the springs. Third, the defendant's game incorporates tension springs that pull up; in order to reset the pins the player relieves the tension on the tension springs.

## DISCUSSION.

Plaintiff claims that his game is entitled to the protection of the doctrine of equivalents. "[A] patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result'" as the patented device. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) *quoting, Machine Co. v. Murphy*, 97 U.S. (7 Otto) 120, 125, 24 L.Ed. 935 (1877). The defendant argues that plaintiff is barred by file wrapper estoppel from invoking the doctrine of equivalents "to recapture claims which [he] has surrendered by amendment." *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736 (1942). "[W]hen the [patent] applicant, in order to meet objections in the Patent Office, based on references to the prior art," narrows his claims, "he recognize[s] and emphasize[s] the difference between" the broad and the amended claims "and proclaim[s] his abandonment of all that is embraced in that difference." *Id.; see Graham v. John Deere Co.*, 383 U.S. 1, 33–34, 86 S.Ct. 684, 702, 15 L.Ed.2d 545 (1966); *Capri Jewelry, Inc. v. Hattie Carnegie Jewelry Enterprises*, 539 F.2d 846 (2d Cir. 1976).

■ Applying these principles to the facts of the instant case is a relatively simple matter. Plaintiff's device was originally rejected as unpatentable over the prior art. In order to meet the objections of the patent examiner, his claims were narrowed so as to limit them to a device in which compression springs push up against the reset plate, and in which the pins are reset by pushing down against and compressing the compression springs. File wrapper estoppel thus bars plaintiff from applying the doctrine of equivalents so that his claim will include a device that does not have these features. The defendant's bowling game does not have them. That game has tension springs that pull up on a hori-

zontal reset bar; the pins are reset by relieving the tension on the tension springs. Accordingly, we hold that the district judge correctly applied file wrapper estoppel to bar plaintiff from invoking the doctrine of equivalents.

■ Plaintiff contends that his amendments merely clarified his claims and made no substantive change. *See Eimco Corp. v. Peterson Filter & Eng'ring Co.*, 406 F.2d 431, 438 (10th Cir. 1968), *cert. denied*, 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749 (1969). The question whether they were clarifying or substantive changes, it is argued, is a genuine issue of fact which precluded the grant of summary judgment. We disagree. The documentary evidence in this case demonstrates quite clearly that the amendments, which must be construed strictly against the plaintiff, *Exhibit Supply Co. v. Ace Patents Corp., supra,* 315 U.S. at 137, 62 S.Ct. 513, were substantive in nature. The patent examiner's objections were not based on any lack of clarity in the plaintiff's claims, but upon their lack of inventive content. The changes were made in order to "define allowable subject matter" over Lloyd and Igou, and to meet the specific objections of the patent examiner. Thus, on the facts of this case, the alleged factual issue cannot be said to be genuine, and the grant of summary judgment was appropriate.

The judgment of the district court is affirmed.