COLECO INDUSTRIES, INC., Appellant,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION, Diamond Pools, Branch Brook Co., Harrow Stores and Pool City, Appellees.

Appeal No. 77–21.

United States Court of Customs and Patent Appeals.

April 6, 1978.

---

Peter L. Costas, Hartford, Conn., attorney of record, for Coleco Industries, Inc., appellant.

Russell N. Shewmaker, Michael H. Stein, Washington, D.C., Robert M. M. Seto, for U.S. Intern. Trade Commission.

J. Ralph King, Arlington, Va. (Lowe, King, Price & Markva, Arlington, Va.), for Diamond Pools, Branch Brook Co., Harrow Stores and Pool City, appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal taken from a decision in ITC Investigation No. 337–TA–25, rendered on April 29, 1977, by the United States International Trade Commission (Commission), *In re Certain Above-ground Swimming Pools*, 194 USPQ 273 (1977). The Commission unanimously decided that there was no violation of § 337 of the Tariff Act of 1930, as amended by the Trade Act of 1974 (19 U.S.C. § 1337)[1] by the importation of certain above-ground swimming pools of the type having a flexible, water-retaining liner supported by a peripheral retaining wall assembled from sections fastened together. This court has authority under § 337(c)[2] to review by appeal a final determination under § 337 by the Commission. This case presents the first appeal under the above statute, as amended, in which we reach the merits.[3] We affirm.

## Background

On February 25, 1976, appellant filed a complaint with the Commission alleging infringement of claims 1, 2, 3 and 5 in U.S. Patent No. 3,268,917 ('917)[4] and predatory

1. Section 337 provides in part:
 (a) Unfair Methods of Competition Declared Unlawful.
 Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

 \* \* \* \* \* \*

 (d) Exclusion of Articles From Entry.
 If the Commission determines, as a result of an investigation under this section, that there is violation of this section, it shall direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers refuse such entry.

2. Section 337(c) provides:
 (c) Determinations; Review.
 The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section. Each determination under subsection (d) or (e) shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of Title 5. All legal and equitable defenses may be presented in all cases. Any person adversely affected by a final determination of the Commission under subsection (d) or (e) of this section may appeal such determination to the United States Court of Customs and Patent Appeals. Such court shall have jurisdiction to review such determination in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the United States Customs Court.

3. In prior cases appealed under § 337, the court disposed of them on threshold issues. *Import Motors, Ltd. v. International Trade Comm'n*, 63 CCPA 52, 530 F.2d 937, 188 USPQ 102 (1975) (order granting stay), 63 CCPA 56, 530 F.2d 940, 188 USPQ 490 (1976) (decision dismissing appeal and vacating stay), 63 CCPA 57, 530 F.2d 940, 188 USPQ 491 (opinion in support of decision), *Rohm & Haas Co. v. International Trade Comm'n*, 64 CCPA ——, 554 F.2d 462, 193 USPQ 693 (1977).

4. Patent '917, for a "Swimming Pool Frame Assembly," issued on August 30, 1966, from application Serial No. 485,009, filed on September 3, 1965, by Joseph Diemond, Melvin Y.

**1250**

pricing by the pool importers. Claim 1 is illustrative of the claimed subject matter:

1. In a swimming pool of the type having a liner member of flexible, relatively waterproof sheet material providing a bottom wall portion and a sidewall portion extending about the periphery of said bottom wall portion, the combination therewith of a frame assembly for supporting said liner member including a generally vertical support panel about the exterior periphery of said liner sidewall portion and closely adjacent thereto to provide horizontal support for said liner sidewall portion; a plurality of cooperating elongated horizontal support members extending in end-to-end relationship about said liner member at the upper edge of said liner sidewall portion and support panel, said horizontal support members having a top wall portion and a depending inner sidewall portion extending therealong providing a shoulder adjacent the upper edge portion of said support panel to align said support panel and limit movement thereof; generally vertical support members at the adjacent end portions of cooperating pairs of horizontal support members, said vertical support members extending outwardly of said vertical support panel and said inner sidewall portions of said horizontal support members, said vertical support members having vertically extending wall portions and a horizontal seating surface portion at the upper end thereof, *the end portions of said horizontal support members having depending retaining elements thereon engaged with said seating surface portion to limit horizontal movement of said horizontal support members relative to said vertical support members and to each other*; and cover members overlying the end portions of said cooperating pairs of horizontal support members and having retaining means thereon engaged with said vertical and horizontal support members to provide a firm assembly therewith. [Emphasis ours.]

The critical portions of the claimed invention and of the imported pools are illustrated in the following diagrams:

'917

End tabs (92); staked tabs (95); separate locking plate (90); horizontal support members (26); vertical support member (70); seating surface of vertical support member (100); apertures (108), for tabs (95) and/or (92), in seating surface. Embodiments of disputed limitation "depending retaining elements thereon": end tabs (92) on separate locking plate (90); and staked tabs (95) on horizontal support members (26).

Gershman, and Norbert A. Vangsness. The initial complaint filed by appellant, assignee of '917, alleged also that U.S. Patent No. 3,274,-621 ('621) was infringed. The Commission found that it was not infringed and appellant did not appeal the Commission's decision on that patent.

**FIG. 4**

Note: Unnecessary reference numbers are deleted.

[Further illustration to follow]

Imported Swimming Pool

Screws (A); cover plate (B); horizontal support members (C) vertical support member (D); seating surface of vertical support member (E).

On April 1, 1977, a hearing was held. The Presiding Officer had decided that '917 was infringed and that no predatory pricing existed. The Commission, reviewing the recommendation of the Presiding Officer in light of the hearing record and post-hearing filings, found that '917 was not infringed and that there was no predatory pricing.[5] The Commission stated, with regard to claims 1, 2, 3 and 5, that the question is whether the claim limitation "depending retaining elements thereon" included, within its scope, screws used to fasten together sections of the imported pools. The Presiding Officer interpreted the term to include screws. However, the Commission gave the term a narrower interpretation, reasoning that "thereon" required that the "elements" be in a "fixed relationship with the horizontal support members even when such members are not in use but are completely disconnected." The concept of a permanent attachment, the Commission concluded, is consistent with a literal reading of the limitation and is reinforced by a preferred embodiment. The Commission also discussed the doctrine of equivalents, which permits one to read a claim(s) on structures that employ substantially the same means to accomplish substantially the same result in substantially the same way. The doctrine was not applied in this case because the Commission preempted its operation by applying the doctrine of file wrapper estoppel. It decided that amendments and remarks made during prosecution limited the claimed invention by describing it as an improved interlock between the horizontal rails and the vertical support members. The Commission understood the claim

5. Two members of the panel found that '621 (note 4) and '917 were also invalid as unpatentable over prior art under 35 U.S.C. §§ 102, 103. Because the Commission made no decision on the validity issue, it is not before us. To obviate a remand on validity, in the event of a reversal of a finding of non-infringement, it would be advisable for the Commission to render a decision on all appealable issues presented to it. Cf. *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, 65 USPQ 297 (1945).

amendments to be responsive to cited references and, therefore, an attempt to avoid rejection based upon those references. The imported pools are, according to the Commission, beyond the scope of the claimed invention under the narrow construction. Finally, the Commission concluded that there was no evidence on record to support a finding of predatory pricing.

## Issues

Although this case brings several issues before the court, we find a touchstone for our decision in the infringement question alone. The resolution of this question turns on the interpretation of the claim language "depending retaining elements thereon," which in turn requires consideration of two underlying questions: (1) whether the screws of the imported pools, as they cooperate with the horizontal and vertical support members, constitute substantially the same means to accomplish substantially the same results in substantially the same way as the "depending retaining elements thereon" of '917 and, if so, (2) whether "file wrapper" estoppel applies in this case.

## OPINION

Patent claims are the measure of a patent grant. Construction of claims to ascertain the intended boundaries of the patent grant is made by reference to the patent's specification. *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459, 473 (1966); *United States v. Adams,* 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479, 482 (1966). In '917, a passage in the specification is crucial and has become a subject of dispute. The passage states:

> Although the retaining elements may be provided in the end portions of the horizontal support members alone by staking or by separate elements, a *highly preferred construction* therefor includes a *separate locking member* which overlies the end portions and *has depending* elements such as integrally formed lugs or separate elements which extend through apertures in the end portions to engage in

the seating surface portion. [Emphasis ours.]

Appellant argues that this passage clarifies the claim language and that the above preferred embodiment includes depending elements either "integrally formed" or "separate" from the locking member. Screws, appellant contends, fall within the category of "separate" depending elements described as part of the preferred construction. The Supreme Court in *Smith v. Snow,* 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721, 24 USPQ 26 (1935), discussed the impact of a preferred embodiment upon claim language. The Court stated:

> We may take it that, as the statute requires, the specifications just detailed show a way of using the inventor's method, and that he conceived that particular way described was the best one. But he is not confined to that particular mode of use, since the claims of the patent, not its specifications, measure the invention. *Paper Bag Patent Case,* 210 U.S. 405, 419, [28 S.Ct. 748, 52 L.Ed. 1122]; *McCarty v. Lehigh Valley R. Co.,* 160 U.S. 110, 116, [16 S.Ct. 240, 40 L.Ed. 358]; *Winans v. Denmead,* 15 How. 330, 343, 14 L.Ed. 717. While the claims of a patent may incorporate the specifications or drawings by reference, see *Snow v. Lake Shore R. Co.,* 121 U.S. 617, 630, [7 S.Ct. 1343, 30 L.Ed. 1004,] and thus limit the patent to the form described in the specifications, it is not necessary to embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced to practice. [294 U.S. at 11, 55 S.Ct. at 283, 24 USPQ at 30.]

 A literal reading of the claims requires, as the Commission found, that "depending" and "thereon" mean a permanent relationship between the horizontal support members and the tabs. Moreover, the suggested embodiments support this interpretation. The claims construed in light of the specification do not literally read on screws as they are used in the imported pools. However, the case law shows that upon a finding of no literal infringement, courts have determined, as a sequence, if the doc-

trine of equivalents applies. Recourse can be had to the doctrine of equivalents,[6] if the three-pronged test is met, i. e., that the allegedly infringing device employ substantially the same means to accomplish substantially the same result in substantially the same way. The Supreme Court in *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 608, [70 S.Ct. 854, 856, 94 L.Ed. 1097,] 85 USPQ 328, 330 (1950), applied the doctrine as follows:

[A] patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' * * * The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, *Imhaeuser v. Buerk*, 101 U.S. 647, 655, 25 L.Ed. 945, although the area of equivalence may vary under the circumstances.

The Court further stated:

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. * * * Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform * *.

A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. [339 U.S. at 609, 70 S.Ct. at 857, 85 USPQ at 330-31.]

The rationale of this court-made rule is that one should not be allowed to practice "a fraud on a patent" by making, using, or

6. In the following cases, the doctrine of equivalents was applied as a matter of course upon a finding of no literal infringement. In *Acme Highway Products Corp. v. D. S. Brown Co.*, 473 F.2d 849, 850–51, 177 USPQ 130, 131 (CA 6 1973), *cert. denied*, 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57, 179 USPQ 321, the court stated:

In determining whether a patent has been infringed by an accused device, two tests must be applied. The first determination to be made is whether there is literal infringement of the patent. In making this determination, the words of the claim in the patent must be compared with the accused device. If the accused device is clearly within the claim, then infringement does exist. *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, [85 USPQ 328] (1950).

The second test is the application of the doctrine of equivalents. The Supreme Court explained this doctrine in *Graver, supra*.

Similarly, the Eighth Circuit stated in *Farmhand, Inc. v. Craven*, 455 F.2d 609, 610, 173 USPQ 1, 2 (CA 8 1972):

Assuming arguendo, no literal infringement of plaintiff's claim 10(h), defendant still cannot prevail. The trial court in finding no literal infringement failed to discuss the next and necessary question—whether the two devices are basically equivalent in means, operation and result.

The United States Court of Claims, in *Tate Engineering v. United States*, 477 F.2d 1336, 1340, 201 Ct.Cl. 711, 178 USPQ 365 (1973), adopted Trial Judge Joseph Colaianni's opinion, in *Tate Engineering v. United States*, 175 USPQ 115, 118 (Ct.Cl. Trial Div. 1972), in which he applied the doctrine of equivalents:

In considering the question of infringement, it is necessary to initially establish the scope and breadth of the patent claims allegedly violated. In this particular instance, it is therefore necessary to establish the scope of claims 5 and 6 of the Graham patent so as to determine if the claims can be "read" on the accused Severn panel. A claim must be read in light of the specification. *Seymour v. Osborne*, 78 U.S. 516, 547, 11 Wall. 516, 20 L.Ed. 33 (1870); *United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Its scope, however, is not limited only to those specific embodiments actually disclosed, but is expanded under the doctrine of equivalents to include embodiments that perform substantially the same function in substantially the same way to produce substantially the same result as the disclosed invention. *Graver Tank & Mfg. Co. v. Linde*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

Accord: *Farmhand, Inc. v. Lahman Mfg. Co.*, 568 F.2d 112, 196 USPQ 597 (CA 8 1978); *Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517, 171 USPQ 129 (CA 7 1971); *Burgess Cellulose Co. v. Wood Flong Corp.*, 431 F.2d 505, 166 USPQ 417 (CA 2 1970); *FMC Corp. v. F. E. Myers & Bro. Co.*, 384 F.2d 4, 155 USPQ 299 (CA 6 1967).

selling a device which meets the test of equivalence when compared to a patented invention but which avoids the claim language. *Id.* The practical significance of this rule is that it permits a patentee to realize the full benefit of his patent grant by enabling the patentee to read his patent claims on a device which is *not* within the literal meaning of his claims. It arms a patentee against a person who merely substitutes a functionally equivalent element in a device and thereby practices the invention without bringing his device within a literal reading of the patent claims. Under this doctrine the patent claims are interpreted in light of all the circumstances of a case, including prior art, and they are also subject to estoppels which may be created by an applicant.

Applying the three-pronged test in the case at hand require the following analysis. Both the screws in the allegedly infringing device and the tabs in '917 function as part of a locking structure. In '917 the tabs (92) or (95) extend from a plate-like piece, either a rail (26) or a locking plate (90), which, in an assembled state, is horizontal. The tabs extend through apertures (108) in the seating surface of the vertical support members (100) and thus cooperate with the apertures to restrict the relative movement of the horizontal and vertical support members (26) and (70).

The screws (A) of the imported pools employ substantially the *same means,* i. e., an elongated interlocking member. Furthermore, the screws (A) accomplish substantially the *same result,* i. e., restrict relative movement between horizontal support members (C) and vertical support members (D), by extending through apertures in the horizontal support members (C), by resting on (although not permanently attached to) the horizontal support members (C), and by extending through apertures in the seating surface of the vertical support members (E). Finally, the screws (A) function in substantially the *same way,* i. e., both the screws and the tabs function by cooperating with matching apertures in vertical and horizontal members. Within the subject matter of the invention, the screws meet the three-pronged test for equivalence and, under the test, the screws are equivalent to the tabs; hence, the doctrine of equivalents must be applied.

■ However, in this case, the doctrine of equivalents is *limited* by the application of the principle of file wrapper estoppel. To determine the extent to which the claims can be expanded under the doctrine, the file history and prior art must be examined. The Commission, applying the doctrine of file wrapper estoppel, concluded that the doctrine of equivalents could not operate to expand the patentee's claims to bring the imported pools within the scope of the claims. In arriving at this conclusion, the Commission discussed appellant's amendments, as well as its remarks. We agree with the Commission's decision, but we conclude that the remarks are more pertinent than the amendment to the estoppel consideration.

In the first office action, March 9, 1966, the examiner, rejecting all claims, cited three references[7] to show the state of the art and cited Barrera, U.S. Patent No. 3,225,362 (Barrera '362) which the examiner stated "obviously fully met" the claims. Appellant addressed these references as well as the copending and later filed application of Gershman, Serial No. 507,634, filed on October 23, 1965, and amended the pertinent claims before allowance. The only significant change made by amendment was to add the following functional language to the claims now on appeal, "to limit horizontal movement of said horizontal support members relative to said vertical support members and to each other." Appellant stated, by way of argument in its response, that the *"novel concept* herein resides in an *improvement for interlocking* the horizontal rails or support members with the vertical support members or posts" (emphasis ours).

7. Wallace, U.S. Patent No. 2,846,694; Lorimer, U.S. Patent No. 2,864,098; O'Connell, et al., U.S. Patent No. 3,142,069. In the notice of allowance, May 6, 1966, the examiner cited a fourth reference to show the state of the art, Barrera, U.S. Patent No. 3,233,251.

Although we understand the amendment to further describe the function of the depending retaining elements in the claimed structure, we do not find that the amendment itself raises an estoppel with regard to applying the doctrine of equivalents to construe the claims. However, in the remarks, appellant cited the copending Gershman application which, we conclude, presents a basis for estoppel. Specifically, appellant stated in the remarks:

In the copending application of Melvin Y. Gershman, Serial No. 507,634, filed October 23, 1965, there is disclosed and claimed such a telescoping assembly wherein the horizontal support members are engaged with the vertical support members within the locking members to permit limited relative horizontal movement. The specifically disclosed embodiment is that of *upstanding tabs or projections on the horizontal rails* which seat within the side walls of the vertical posts although an alternative arrangement is one in which the rails have slots receiving the side walls of the vertical posts. The present invention is directed to facilitating a more rigid assembly adapted to more massive vertical posts and rails than those specifically disclosed therein. [Emphasis ours.]

Continuing, appellant described the locking members of the claimed invention:

In the present invention the vertical posts are provided with horizontal seating surface portions at the upper end thereof and the horizontal rails or support members have depending retaining elements on the end portions thereof which engage with the horizontal seating surface portion of the vertical posts to limit movement of the horizontal support members relative to the vertical posts and to each other. Although the retaining elements may be formed as a part of the horizontal support members, desirably a separate locking element is utilized to provide the retaining elements and is disposed over the adjacent end portions of the horizontal support members so that the retaining elements extend therethrough and into the horizontal seating surface portion.

In the preferred embodiment, tabs are also struck downwardly from the horizontal support members as a result of providing the apertures therein to seat the retaining elements of the locking plate or member.

The Gershman application issued as U.S. Patent No. 3,280,408, of record. It relates to swimming pools, particularly to retaining walls. The patent discloses "tabs" which are of two kinds, those performing a locking function, "incised and bent upwardly from the material of the lower wall portions [vertical support members]," and those formed in the upper wall portion by downward bending of the material to form openings. The application also discloses the use of screws for attaching horizontal rails to vertical support members. Gershman is more pertinent to the issue before us than the references cited by the examiner. It is therefore the statements appellant made with regard to that reference that become a basis for estoppel. From the above arguments contained in the attorney's remarks, we conclude that appellant distinguished its claimed invention so as to disclaim "tabs" and screws disclosed in Gershman in order to secure allowance of its claims. In the immediately preceding quote, appellant describes the invention by three different embodiments: (1) depending retaining elements on the horizontal support members, (2) depending retaining elements on a separate locking element disposed over the horizontal seating surface of the vertical support members, and (3) the combination of embodiments (1) and (2). Appellant distinguishes its invention from Gershman by describing tabs instead of screws for the locking function and by describing tabs which depend from the horizontal support members instead of from the vertical support members.

■ Although the doctrine of equivalents enables a patentee to expand the scope of his claims to encompass the imported pools, he may be estopped to benefit by such a construction of his claim. The legal question is whether appellant is estopped by

arguments made with regard to the Gershman copending application voluntarily cited by appellant and acknowledged as prior art.[8] Stated as a general proposition, the legal issue is whether an estoppel arises in the prosecution history from arguments not directed specifically to examiner's cited references but directed to a reference cited by applicant.

█ While we acknowledge that there are many cases which discuss the doctrine of "file wrapper" estoppel as it applies to amendments only,[9] as opposed to arguments made during prosecution, we find no case, espousing this view, which is directly on point with the fact pattern now presented. However, there is a line of cases [10] which has developed an estoppel theory broader than the traditional "file wrapper" estoppel which applies only to amendments. Notwithstanding the instructive discussion in these cases, none is determinative of the case at hand. We are in the position of enunciating a rule broader than the traditional "file wrapper" estoppel doctrine. A patentee having *argued* a narrow construction for his claims before the United States Patent and Trademark Office (PTO) should be precluded from arguing a broader construction for the purposes of infringement. We believe this to be a sound legal proposition which comports with the rationale underlying the traditional doctrine of "file wrapper" estoppel, that once a broader scope of interpretation for a claim is disclaimed by an applicant before the PTO, he

is not entitled to reinstate the broader scope. The Supreme Court applied this rationale in *Exhibit Supply Co. v. Ace Patents Corp.*, supra, note 9.

Assuming that the patentee would have been entitled to equivalents embracing the accused devices had he originally claimed a 'conductor means embedded in the table,' a very different issue is presented when the applicant, in order to meet objections in the Patent Office, based on references to the prior art, adopted the phrase as a substitute for the broader one 'carried by the table.' * * By striking that phrase from the claim and substituting for it 'embedded in the table,' the applicant restricted his claim * * *. By the amendment, he recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. [315 U.S. at 136, 62 S.Ct. at 518, 52 USPQ at 279.]

█ The doctrine of equivalents permits a patent grant to be extended beyond its literal confines, i. e., the claims, in order to protect a patentee's rights. If no literal infringement is found by a court, the next step is for the court to determine if the doctrine of equivalents is to be applied by comparing an allegedly infringing device with the claims as they are construed in the light of the specification.[11] Assuming the three-pronged test establishes equivalency between the claims and the infringing device, the extent to which the doctrine is

---

**8.** *In re Nomiya,* 509 F.2d 566, 184 USPQ 607 (CCPA 1975); *In re Hellsund,* 474 F.2d 1307, 177 USPQ 170, 59 CCPA 1382 (1973). The acknowledgment occurred in appellants' main brief before this court.

**9.** *Exhibit Supply Co. v. Ace Corp.,* 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736, 52 USPQ 275 (1942); *Cohn v. Coleco Industries, Inc.,* 558 F.2d 53, 194 USPQ 241 (CA 2 1977); *Christopher J. Foster, Inc. v. Newport News Co.,* 187 USPQ 733 (CA 4 1975); *Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866, 180 USPQ 609 (CA 7), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113, 183 USPQ 321 (1974); *Burgess & Associates, Inc. v. Klingensmith,* 487 F.2d 321, 180 USPQ 115 (CA 9 1973); *Tektronix, Inc. v. United States,* 445 F.2d 323, 195 Ct.Cl. 53, 170 USPQ 100 (1971).

**10.** The following cases modified the doctrine of "file wrapper" estoppel. *Moore Business Forms, Inc. v. Minnesota Mining & Mfg. Co.,* 521 F.2d 1178, 187 USPQ 8 (CA 2 1975); *Duplan Corp. v. Deering Milliken, Inc.,* 379 F.Supp. 388, 181 USPQ 629 (D.S.C.1974) (court reversed itself on application of traditional file wrapper estoppel and applied estoppel by admission); *Marston v. J. C. Penney Co., Inc.,* 324 F.Supp. 889, 170 USPQ 25 (E.D.Va.1971), aff'd mem., 469 F.2d 694, 176 USPQ 193 (CA 4 1972); *William Hodges & Co. v. Sterwood Corp.,* 348 F.Supp. 383, 176 USPQ 49 (E.D.N.Y. 1972) (dictum).

**11.** Note 6, supra.

utilized by a court to benefit the patentee is measured by estoppels arising from the prosecution history. There is no practical reason to restrict this estoppel theory to the doctrine of file wrapper estoppel as applied by the traditional view. A response to an examiner's office action may include an amendment accompanied by remarks or it may include only remarks. Because applicant's ultimate goal in submitting amendments and offering arguments in support thereof is the securing of a patent, we find no reason not to extend the traditional estoppel doctrine beyond estoppel by amendment to estoppel by admission. Therefore, whenever a patentee utilizes the doctrine of equivalents in an infringement suit to extend the scope of his claims, he opens his case to rebuttal based on any statements he made on the record during prosecution.

 We hold that appellant is estopped to broaden the scope of the claims on appeal to cover the imported swimming pools. For the reasons stated above, we *affirm* the decision of the Commission.

RICH, Judge, concurring, with whom MARKEY, Chief Judge, joins.

The record, more particularly the file history of appellant's patent, makes it abundantly clear that the invention of the '917 patent in suit is simply—to use appellant's own words (Ex 145)—"an improvement for interlocking the horizontal rails or support members with the vertical support members or posts." The only means disclosed for doing that are either depending tabs struck down out of the bottom end portions of the sheet-metal horizontal rails, which leaves holes in them, or a separate locking member or plate with depending tabs, which tabs can be inserted through the holes in the ends of the rails, or both. Whichever form of tabs is used, they lock the rail ends to the posts by being inserted in matching slots in a seating plate on the top of the post. *That* is appellant's *interlock* invention.

Reading the claims in suit in the light of the specification, as they must be, they are literally limited to "depending retaining elements [tabs]" *on* "the end portions of said horizontal support members [rails]." Utilizing dictionary definitions of the word "depending," the ITC held that the "retaining elements" had to be *fixed* to the rails, by being integral therewith or otherwise. So construed, the claims of course do not read on entirely separate fastening elements such as the screws appellant argues meet the term "depending retaining elements" of the claims in suit.

The claims, therefore, are not infringed when they are given their ordinary meaning. This is still true even if the claims are given a construction broad enough to read on having the tabs on a separate locking member, which is appellant's preferred embodiment, though such construction would be stretching them considerably.

As to applying the doctrine of equivalents in this case, *no basis* has been laid for its application by showing, for example, that appellant's invention has made a great advance in the art or that appellees have appropriated the essence of the invention. The doctrine is an exception to the rule that patentees are limited to what they claim and is not applied in every case. See 7 Deller's Walker on Patents § 546 (2d ed. 1972). I would point out that in *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), the Court said at 608 that the doctrine of equivalents *may* be applied "when the proper circumstances for its application arise." One such circumstance is appropriating *the invention* while avoiding *claim* limitations through use of equivalents therefor. Appellant invented an interlock between metal members which appellees have come no where near appropriating. All they use is *screws.* Surely, it is not necessary to make a complicated excursion into the prior art to establish what we can judicially notice, that nothing is commoner than securing parts together with screws; and, if the parts be of sheet metal, securing them with sheet-metal screws. The technology of fastening metal parts together with screws is common property *and no part of appellant's invention.* The fact cannot be obscured by writing long combina-

tion claims in "peripheral" form with appellant's invention buried in the middle; he has made it clear as day that the swimming pool, or the swimming pool frame assembly, is not what he invented, but only the *improved* interlocking connections between the rails and posts thereof by which they are attached to each other. Having made that clear in his specification and claims and prosecution history, it is utterly absurd that he should now contend that his invention encompasses the use of screws instead of the *interlock* he invented. If he is to so insist, he does so "to the death," for, as the Commission minority opinions pointed out, if the claims read on fastening the parts together with screws they must be invalid. Arriving at this conclusion does not require an estoppel.

Finding no ground for applying the doctrine of equivalents, I likewise find no reason to counter it by invoking the doctrine of estoppel based on the prosecution history—quaintly still called "file wrapper" estoppel though it has never been clear what the wrapper, or table of contents of the file which it is, has to do with the estoppel. This is a simple case and it should be simply disposed of by agreeing with the ITC majority's construction of the claims. At least it is reasonable and saves them from certain invalidity. Appellant must be content with protection on what *he invented* which is the most the patent statutes entitle him to. The fundamental and correct approach to this case is to ask: What did appellant invent? Are appellees using it? The invocation of complicated patent law doctrines and counter doctrines to answer those easily-answered questions is wholly unnecessary. The unnecessary discussion of them, which I do not join, only complicates the case law.

The majority applies the "three-pronged test of equivalency"—does defendant employ "substantially the same means to accomplish substantially the same result in substantially the same way"?—to find that defendant's screw connection is, in law, the equivalent of patentee's invention. I disagree with the analysis because at least two prongs of the test are not satisfied. Assuming the same result is attained (securing posts and rails together), defendant's screws are not "substantially the same means" as the patentee's tabs and slots and they do not function in "substantially the same way." Whether the total result is substantially the same is also a matter of doubt. The tabs provide functions the screws cannot; they allow the pool elements to be initially assembled without inserting screws.

If a patentee is estopped by his prosecution history to assert that a claim is broad enough to be infringed by an accused structure, as the majority is holding to be the case here, it is wasted motion, if not an absurdity, to first apply the doctrine of equivalents to expand the claim "beyond its literal confines" to cover the structure and in the next breath contract it to its original literal scope. It suffices to apply the estoppel. Clearly, the doctrine of equivalents is inapplicable. That was apparently the view the Commission took of the matter.

In conclusion, this is simply not a case for application of the doctrine of equivalents. The minimum showing for a finding of infringement on any theory is that the alleged infringer has taken something the patentee invented. There is no such showing here.