**HALE FIRE PUMP CO., Appellant,**

v.

**TOKAI, LTD., C. Itoh & Co., Ltd., C. Itoh America, Inc., and International Trade Commission, Appellees.**

Appeal No. 79–21.

United States Court of Customs and Patent Appeals.

Feb. 7, 1980.

Eugene E. Renz, Jr., Media, Pa., William E. Hedges, Philadelphia, Pa., Tom M. Schaumberg, Paul Plaia, Jr., Leslie Glick, Washington, D. C., attys. of record, for appellant.

Russell N. Shewmaker, Gen. Counsel, Washington, D. C., Edward R. Easton, Washington, D. C., attorneys of record for the International Trade Commission, appellee.

Harvey Kaye, Michael A. Hertzberg, attys. of record, for Tokai, Ltd., et al., appellees.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and MALETZ,* Judge.

* The Honorable Herbert N. Maletz of the United States Customs Court, sitting by designation.

MILLER, Judge.

This is an appeal from a decision[1] of the United States International Trade Commission ("ITC") in Investigation No. 337–TA–43, *In re Certain Centrifugal Trash Pumps*. The ITC found that there was no violation of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), in the importation into, or sale in, the United States of certain centrifugal trash pumps. We affirm.

*Background*

Hale Fire Pump Co. ("Hale") filed a complaint with ITC on January 9, 1978 alleging that Tokai, Ltd., Ataka America, Inc., C. Itoh & Co., Ltd., and C. Itoh America, Inc. ("respondents") were in violation of section 337 by reason of the unauthorized importation or sale in the United States of centrifugal trash pumps which infringed Hale's United States Patent No. 3,499,388[2] (" '388 patent"), the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States.

Centrifugal trash pumps are used at construction cites to remove water or other liquids that contain solid debris. The pump covered by the '388 patent includes (see Fig. 3 below) intake 14 and discharge 16 ports, a volute assembly 18 comprising suction and discharge sections, and an impeller 20 mounted in the discharge section and connected to a motor by a drive shaft 24. The key feature of the claimed invention is a releasable means which can alone assemble and disassemble the volute assembly from the pump casing. The only releasable means described in the specification is a reversible jack screw assembly 109. Removal of the volute assembly is required in these pumps to provide access to the pump interior for removal of foreign objects or repair of internal parts.

Illustration to follow.

1. Rendered February 14, 1979.

2. U.S. Patent 3,499,388, entitled "Centrifugal Pump," issued March 10, 1970, from application serial No. 645,708, filed on June 13, 1967, by Harry A. Eberhardt, and assigned to Hale.

FIG 3.

Claim 1, the only claim in issue [3], reads as follows:

1. A centrifugal pump comprising a casing having an intake side with at least one inlet port and a discharge side with a discharge port, a unitary volute assembly consisting of a suction volute section and a discharge volute section, an impeller mounted for rotation about a predetermined axis and releasable means having means for moving said volute assembly into an assembled position interiorly of the casing and for moving said volute assembly into a disassembled position whereby on releasing of said releasable means alone permitting complete disassembly of said volute assembly from said casing and any other interior parts of said pump.

Respondents' pumps, illustrated by a representative example below, are essentially identical to Hale's pump except that respondents' pumps have no reversible jack screw assembly, but, instead, include locking knobs B and handles C for removing the volute assembly.

---

**3.** Before ITC, Hale alleged infringement of claim 17, but this claim has not been argued on appeal.

*ITC Decision*

After discussion the presumption of validity that attaches to an issued patent,[4] ITC pointed out that the respondents did not seek to establish invalidity of the '388 patent over the prior art, but, instead, argued that the patent is valid only if, in light of the prosecution history, drawings, and specification, claim 1 is so construed as to not cover respondents' pumps. The ITC essentially agreed with this contention and concluded, without much explanation, that "In light of the prosecution history of the '388 patent and in light of the specifications and drawings, it is apparent to us that the '388 patent is valid if properly and narrowly construed."

The ITC cited *Coleco Industries, Inc. v. International Trade Commission*, 573 F.2d 1247, 65 CCPA 105, 197 USPQ 472 (1978), for the proposition that ascertainment of the coverage of a claim is made by reference to the patent's specification. In finding that claim 1 was not literally infringed by respondents' pumps, ITC stated:

Clearly, claim 1, construed in light of the specifications, defines a reversible jack screw assembly with a definite mechanical advantage of power leverage. . . . Respondents' accused pumps do not have the reversible jack screw assembly of Hale's patented pumps referred to in the '388 patent specifications. Nor do respondents' accused pumps have the patented advantage of Hale's . . . pump. The knobs and handles of respondents' accused pumps, unlike the reversible jack screw of [Hale's pump], cannot exert a mechanical advantage or power leverage to break the seal between the pump's cover and the volute assembly. As the [specification indicates], if the [Hale] pump is frozen or corroded, its reversible jack screw (releasable means) alone moves the volute assembly into a disassembled position. The mechanical advantage of power leverage, in *alone* freeing a volute frozen in place by corrosion provided by the reversible jack screw of the Hale . . . pump, is one of its primary advantages. . . .

---

4. 35 U.S.C. § 282 provides, in pertinent part, as follows:

A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

. . . Claim 1, construed in light of the specifications and drawings, does not literally read on the releasable means (e. g., the knobs and handles) of respondents' accused pumps. With respect to the "releasable means" of claim 1, the specifications and drawings disclose a reversible jack screw. Respondents' accused pumps simply do not have the releasable means of [Hale's] pump, namely, a reversible jack screw or its mechanical equivalents.

The ITC then considered whether respondents' pumps infringe under the doctrine of equivalents, and, citing *Coleco*, indicated that the proper test is whether the allegedly infringing device employs substantially the same means to accomplish substantially the same results in substantially the same way. The ITC also pointed out that the Supreme Court in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), said that "[w]hat constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." The ITC continued:

> [E]ven applying this doctrine, the Commission cannot find infringement because of principles of estoppel which delimit the scope of equivalents available to complainant. In other words, if, during the prosecution of a patent application, an applicant has amended the claims or has made representations or arguments limiting or narrowing the scope of the claims in order to obtain the allowance of the claims over the prior art by the patent examiner, then the applicant is estopped from subsequently trying to expand the scope of the claims beyond those amendments, representations, or arguments . . . . . The prosecution history of the '388 patent clearly shows that the patent examiner, in requiring amendments to what became claim 1 prior to its allowance over the prior art, limited the releasable means of the claims so that it defined a reversible jack screw assembly. Under the doctrine of file wrapper estoppel, complainant cannot now broaden the meaning of the term "releasable means"

beyond what was allowed by the examiner over the prior art. . . .

The ITC concluded that because there was no infringement of the '388 patent, respondents could not be in violation of section 337. In light of this conclusion, the majority of the ITC made no finding on whether the domestic industry is efficiently and economically operated or whether assuming infringement, the domestic industry is substantially injured.

Two Commissioners filed concurring opinions. Commissioner Alberger, while agreeing that the patent was valid but not infringed, pointed out that this court in *Coleco* has admonished ITC to reach all appealable issues in order to avoid a remand. Commissioner Alberger found that even if respondents infringed the '388 patent, this action did not have the effect or tendency to substantially injure the efficiently or economically operated domestic industry. Commissioner Stern, while also agreeing on validity and infringement, thought that the record was inadequate to make any finding on whether the domestic industry was efficiently operated or was injured.

## OPINION

The question presented to this court is whether respondents' pumps include the "releasable means" recited in claim 1. The releasable means is defined, in claim 1, as:

> releasable means having means for moving said volute assembly into an assembled position interiorly of the casing and for moving said volute assembly into a disassembled position whereby on releasing of said releasable means alone permitting complete disassembly of said volute assembly from said casing and any other interior parts of said pump.

Because we are dealing with a "means for" type claim, reference must be made to the last paragraph of 35 U.S.C. § 112, which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or

acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

█ The only structure described in appellant's specification which corresponds to the releasable means is a reversible jack screw assembly. Therefore, the "releasable means" in claim 1 must be construed to cover a reversible jack screw and "equivalents thereof." *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 82, 193 USPQ 449, 460 (Ct.Cl.1977). Because respondents' pumps clearly do not include a reversible jack screw, we must determine whether these pumps include a functional equivalent.[5]

█ As properly stated by ITC, under the doctrine of equivalents, the test is whether the allegedly infringing device employs substantially the same means to accomplish substantially the same result in substantially the same way. *Graver Tank & Manufacturing Co. v. Linde Air Co.*, 70 S.Ct. 854, 94 L.Ed. 1097, 339 U.S. 605, 85 USPQ 328 (1950); *Coleco Industries, Inc. v. International Trade Commission*, 573 F.2d 1247, 65 CCPA 105, 197 USPQ 472 (1978); *Bendix Corp. v. United States*, 199 USPQ 203, 223 (Trial Div.Ct.Cl.1978); *Parmelee Pharmaceutical Co. v. Zink*, 285 F.2d 465, 128 USPQ 271 (8th Cir. 1961); *In re Shaffer*, 229 F.2d 476, 43 CCPA 758, 108 USPQ 326 (1956). Furthermore, as pointed out by the Court in *Graver Tank & Manufacturing Co. v. Linde Air Products Co., supra*, 339 U.S. at 609, 70 S.Ct. at 856–57, 85 USPQ at 330–31:

> What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, . . . is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. . . . Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.
>
> A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises, and, of course, by the disclosures of the prior art. . . .

*Accord, Coleco Industries, Inc. v. International Trade Commission, supra*, 573 F.2d at 1254, 65 CCPA at 113, 197 USPQ at 477.

In determining whether respondents' knobs and handles are an equivalent of the reversible jack screw assembly, we refer to the following portion of appellant's '388 patent specification which describes the jack screw assembly, its manner of operation, and its result:

> Displacement of the volute assembly is controlled by means of a jack screw assembly 109 comprising a yoke member 110 having inturned lugs 112 adjacent opposite ends thereof which engage in groove-like pockets 113 in the exterior of the pump body and a jack screw 114 threaded in a hub portion of the yoke, the inner end of which engages in a pocket 117 in the end wall 60 of the volute. As illustrated in FIGS. 3 and 7, the inner end of jack screw 114 is provided with an enlarged head 119 which is adapted to engage a ring 121 seated in a groove in the pocket 117. By this arrangement the

---

5. Appellant's position is that respondents' pumps do contain such a "releasable means" because they are capable of performing the functions described in the claim after the words "releasable means." However, according to section 112, "means for" claims are not to be read in a vacuum and can *only* be construed by reference to the specification. *Graphicana Corp. v. Baia Corp.*, 472 F.2d 1202, 1204, 176 USPQ 455, 456 (6th Cir. 1973); *Ford Motor Co. v. Gordon Form Lathe Co.*, 87 F.2d 390, 392, 32 USPQ 409, 411 (6th Cir. 1937). Here, the determinant for the coverage of claim 1 is the structure shown in the specification which corresponds to a releasable means, and any "equivalents thereof."

jack screw may be used to disassemble the volute assembly simply by turning the jack screw. In normal operation, the jack screw 114 is turned in to firmly seat the volute in place in the pump body, the spiral wall 77 abutting the front wall of the pump body to properly locate the walls of the volute with the walls of the pump body to establish seals between the intake section and discharge section. Now when it is desired to remove the volute assembly, the jack screw is simply threaded outwardly whereby the volute is displaced axially toward the rear of the pump body. This arrangement provides an easy means for assembling the volute to the one-piece body portion initially and also provides the necessary power leverage to break the volute free should·it be stuck from corrosion or foreign matter, thus affording an easy means for rotating the volute to adjust the cut-off clearance as discussed above.

The importance of this jack screw assembly in freeing a volute was reiterated by appellant during prosecution of the '388 patent:

It is noted that Guyer [a reference] shows a jack screw assembly that is only operable to seat in one direction, that is, to maintain the closure unit 29 firmly seated. It is not a reversible jack screw . . . . In applicant's pump the re-

versible feature is important for the reason that the volute may become frozen or locked in place due to corrosion over a period of time and it would not be possible with Guyer's jack screw to remove it without additional means.

 Thus, a vital characteristic of the reversible jack screw is that it provides a mechanical advantage which exerts a force when removing a volute that has become frozen or locked. The handles on respondents' pumps do not provide such a force,[6] and respondents' witness, Mr. Putnam, demonstrated that the handles are not even needed to remove the volute assembly in respondents' pumps. Accordingly, we conclude that respondents' handles and knobs are not an equivalent of the reversible jack screw assembly.

In view of the foregoing, we hold that respondents' pumps do not infringe claim 1 of the '388 patent.

The decision of ITC that respondents are not in violation of section 337 [7] is *affirmed*.

---

6. Nor do the knobs, which have nothing to do with moving the volute to a disassembled position.

7. In view of our decision, it is unnecessary to reach the issue of file wrapper estoppel.